**UNITED STATES of America, Plaintiff,**

v.

**Wynne Brown COOPER, Defendant.**

**Civ. A. No. 87–628.**

United States District Court,
W.D. Pennsylvania.

Sept. 7, 1988.

Alan E. Cech, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiff.

Paul H. Titus, Joy Gobos, Mansmann Cindrich & Titus, Pittsburgh, Pa., for defendant.

## MEMORANDUM ORDER

BLOCH, District Judge.

On May 9, 1988, this action was referred to Chief United States Magistrate Ila Jeanne Sensenich for report and recommendation on the parties' motions for summary judgment in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B), and Rule 4 of the Local Rules for Magistrates.

The magistrate's report and recommendation, filed on August 11, 1988, recommended that plaintiff's motion for summary judgment be granted and that defendant's motion for summary judgment be denied. It further recommended that judgment in the amount of $281,082.66 in damages as of April 1, 1988, plus interest at the rate of $52.24 per day should be entered against defendant. The parties were allowed ten (10) days from the date of service to file objections. Service was made on both parties on August 12, 1988. Objections were filed by defendant's counsel on August 22, 1988. After *de novo* review of the pleadings and documents in the case, together with the report and recommendation and objections thereto, the following order is entered:

AND NOW, this 7th day of September, 1988, IT IS HEREBY ORDERED that plaintiff's motion for summary judgment is GRANTED and that defendant's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that judgment in the amount of $281,082.66 in damages as of April 1, 1988, plus interest at the rate of $52.24 per day is entered against defendant.

The report and recommendation of Chief Magistrate Sensenich, dated August 11, 1988, is adopted as the opinion of the court.

## MAGISTRATE'S REPORT AND RECOMMENDATION

ILA JEANNE SENSENICH, Chief United States Magistrate.

Plaintiff, the United States of America, brings this action against defendant, Wynne Brown Cooper, to recover three times the amount of a scholarship she was awarded by the Department of Health and Human Services for a period of three years while she attended medical school. In the complaint filed on March 23, 1987, plaintiff demanded judgment against defendant in the principal sum of $126,801.00, together with interest of $134,326.95 and costs. Defendant filed an answer and counterclaim. Both parties have filed motions for summary judgment. For the reasons set forth in this report, it is recommended that plaintiff's motion for summary judgment be granted and that defendant's motion for summary judgment be denied.

In 1970 the National Health Service Corps (NHSC) was established in response to the geographic maldistribution of health professionals. The NHSC was established to authorize the assignment of commissioned officers and other personnel of the Public Health Service to areas with critical health manpower shortages. In 1972 the Public Health and National Health Corps Scholarship Training Program was enacted as a major recruitment device to obtain trained physicians, dentists, nurses, and other health related specialists for the NHSC and other units of the Public Health Service. Pub.L. 92–585. The intent of this program was, "to establish a generous scholarship program for students who will undertake service in an area or program into which the Secretary finds it difficult to attract health professionals lacking such a

scholastic program." S.Rep. No. 92–1062, 92 Cong., 2d Sess., *reprinted in* 1972 U.S. CODE CONG. & AD.NEWS, 4832, 4841.

Effective October 1, 1977, a new NHSC Scholarship Program with a similar purpose was established. Congress was concerned with the geographic maldistribution of health manpower and enacted this scholarship program to help alleviate that problem. The NHSC Scholarship Program provides the scholarship recipient with an award covering the costs of tuition, fees, books and laboratory expenses, plus a monthly support stipend. In return, the scholarship recipient agrees to serve as a member of the NHSC, for a period of time equal to one year for each school year the individual receives the scholarship, in the Health Manpower Shortage Area (HMSA) designated under 42 U.S.C. Section 254e to which he or she is assigned by the Secretary. 42 U.S.C. Section 254*l*(f)(1). Each scholarship recipient is to begin their service obligation upon completion of their academic training; however, the recipient may, with the approval of the Secretary, defer this obligation for a period of time required by the individual to complete a residency. 42 U.S.C. Section 254m(b)(5)(A). Scholarship recipients who did not begin their service obligations when due are subject to liability equal to three times the scholarship amount received plus interest. 42 U.S.C. Section 254*o*(b)(1).

On May 30, 1978, defendant, then a medical student at the University of Pittsburgh School of Medicine, applied for a scholarship award through the NHSC Scholarship Program. She received a scholarship award for the period July 1, 1978 to June 30, 1979. (Exhibit 1, Plaintiff's Motion for Summary Judgment.) Prior to applying for the award, she discussed the program with the financial aid officer and several students at the medical school who were scholarship recipients. She knew at least one student in the program who had been placed in a hospital in Pittsburgh to fulfill his service obligation. Before she completed medical school, she also knew of at least two other students in the program who were placed through hospitals in Pittsburgh to fulfill their service obligations.

(Defendant's deposition, p. 17). Defendant avers that before she was called upon to fulfill her service obligation, the procedure used by the NHSC to place recipients appeared to be flexible and negotiable and that she knew that recipients regularly arranged to fulfill their service obligations in an HMSA of their preference. (Defendant's affidavit, paragraph 6, March 28, 1988.) However, she has admitted that no member of the NHSC gave her this information and she has not produced any document she received prior to applying for the award indicating that the recipient would be assigned to any HMSA of their choice. (Defendant's deposition, p. 14.) The NHSC Scholarship Program Contract which defendant executed on May 30, 1978, provides that the applicant agrees to serve in the full-time clinical practice of his or her profession as a commissioned officer in the Regular or Reserve Corps of the Public Health Service or as a civilian member of the Corps in a HMSA designated under Section 332 of the Public Health Service Act *to which the applicant is assigned.* (Emphasis supplied.) On March 26, 1979, defendant signed an extension of the scholarship for the period July 1, 1979 to June 30, 1980. She signed another extension for the year from July 1, 1980 to June 30, 1981. She received scholarship awards for those three years in the total amount of $42,-267.00. Upon graduation she requested a four-year deferment of her service obligation to complete post-graduate training in obstetrics/gynecology. The deferment request was granted and her service obligation was to begin in July of 1985.

Scholarship recipients who were obligated to begin their service in July 1985 could begin the process of selecting a placement site as early as July 1984. At that time each scholarship recipient was given a list of possible placement sites throughout the country called the Health Manpower Shortage Area Placement Opportunity List (HPOL). The recipients were also given the available sites of the Indian Health Service. Recipients whose service obligation was due to begin in July 1985 were required to perform their service obligation

at one of the sites on the aforementioned lists. They were given the opportunity to locate and finalize their placement to any site on the HPOL during the Early Decision Alternative period from July 1, 1984 through September 30, 1984. Placement could be arranged during that time for any site on the HPOL which had a vacancy for a physician of the scholarship recipient's particular qualifications. There were 81 placement sites for OB/GYN scholarship recipients listed on the 1985 HPOL, none of which were located in Pittsburgh. (Koontz deposition, pp. 24–25.) Defendant attempted to obtain placement at three sites on the HPOL including two locations in Detroit, Michigan, and one location in Greene County, Pennsylvania. (Defendant's deposition, pp. 18–23.) None of these attempts were successful. During this time she also made extensive efforts to get approval of an OB/GYN site in the Pittsburgh area as an approved placement site. She contacted two health care institutions in and near Pittsburgh and determined that each was in need of an OB/GYN. She requested the NHSC to place either or both of these institutions on the 1985 HPOL so she could be assigned there but the NHSC did not do so. (Defendant's affidavit, paragraphs 20–25.) In 1985 defendant was married, had two young children, and her spouse was employed in Pittsburgh. She felt it was necessary for her to fulfill her service obligation in Pittsburgh, since otherwise she would either have to be separated from her family or her husband would have to leave his employment in the Pittsburgh area. She informed the NHSC of this need in October, 1984.

Since the defendant was not able to locate a placement during the Early Decision Alternative period, she was assigned to Region IV to complete her site selection. She was permitted to locate a placement within this region by April 15, 1985. She made no effort to locate a placement within that region and was then assigned to the Lee County Medical Clinic in Bishopville, South Carolina, on April 26, 1985. She did not finalize placement at that site and was declared in breach of her NHSC scholarship contract by failing to begin her service

obligation at a designated site on July 1, 1985.

During late 1985 and 1986, Dr. Cooper engaged in private practice and participated in community projects which focused on providing OB/GYN care to low income, non-white adolescents in Pittsburgh's HMSAs. She has provided this court with documentation indicating that the City of Pittsburgh had an extremely high infant mortality rate for non-whites in 1985. On January 17, 1986, she executed a forbearance agreement with plaintiff which provided that she could serve her obligation in lieu of a monetary payback. She initiated a variety of efforts to secure placement in an HMSA within Pittsburgh. Various officials wrote to the NHSC on her behalf, requesting that she be permitted to fulfill her service obligation in Pittsburgh, especially in light of the area's high rates of teenage pregnancy and black infant mortality. (Defendant's affidavit, paragraphs 38, 39, 43, March 28, 1988). On March 24, 1986, the NHSC notified defendant that it would not permit her to fulfill her service obligation in Pittsburgh and instructed her to contact the Indian Health Service and arrange for placement in one of the western states. She did not finalize this assignment and on August 16, 1986, was notified that her debt was due. She asked the NHSC to reconsider its decision and permit her to fulfill her service obligation by maintaining her practice and various projects in Pittsburgh. She further offered to extend her commitment beyond the usual requirements of the Public Health Service Act. Her requests were rejected and this lawsuit was instituted.

Dr. Cooper filed a counterclaim alleging that plaintiff's actions during the 1985 placement cycle violated the Administrative Procedures Act, 5 U.S.C. Sections 551–575, 701–706, and that they were arbitrary and capricious and in violation of the law. She also asserts that the 1985 HPOL was invalid because it was not promulgated according to the rule making provisions of the Administrative Procedures Act.

Summary judgment is appropriate only where there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). Any doubt as to the existence of a genuine issue of fact is to be resolved against the moving party. Documents filed in support of a motion for summary judgment are to be considered to determine whether issues of fact exist and not to decide the fact issues themselves. *United States ex rel. Jones v. Rundle,* 453 F.2d 147, 150 (3d Cir.1971).

Defendant raises two issues that she argues preclude the entry of summary judgment in favor of plaintiff and support the entry of summary judgment in her favor. She first argues that plaintiff's actions in preparing the HPOL for the 1985 placement cycle were arbitrary, capricious and not in accordance with the law. She also argues that the HPOL is invalid because its adoption and use violated the rule making requirements of the Administrative Procedures Act.

With respect to her first argument, defendant refers to the sections of the Public Health Service Act which define in detail the factors the Secretary is to consider when designating an area or group as an HMSA. She also refers to the sections which state that an HMSA can be a population group which need not conform to the geographic boundaries of a political subdivision and that it need only be a population group which has a health manpower shortage. 42 U.S.C. Section 254e(a)(1). Defendant points out that one of the considerations which must be taken into account by the Secretary in designating areas as HMSAs is the infant mortality rate of the area or population group. 42 U.S.C. Section 254e(b). She also points out that in assigning scholarship recipients to an HMSA to fulfill his or her service obligation, the Secretary is obligated to consider the characteristics which increase the probability of the members remaining to serve the area upon completion of the assignment. 42 U.S.C. Section 254f(f). Finally, the defendant shows that none of the 1985 OB/GYN sites on the HPOL were in urban inner city areas despite the unacceptable rate of mortality among Pittsburgh's black infants. Therefore defendant argues that plaintiff's actions in preparing the 1985 HPOL were arbitrary, capricious and not in accordance with the law.

The depositions, affidavits, and documents in this case reveal the method in which the OB/GYN placement sites for the HPOL were determined. Various sources of information were used in determining the areas which had a high need for physicians. In determining the areas with the greatest need for physicians specializing in OB/GYN, every county in the United States was ranked according to their birth weight rates. Dr. Koontz testified that low birth weights were used instead of infant mortality rates because they are a more accurate indicator of a need for more OB/GYN care (Koontz deposition, p. 13). Of those counties with the highest rate of low birth weight, it was then determined which counties were under-served and had a deficit of more than one OB/GYN. A total number of sites were placed on the HPOL which approximated the expected number of OB/GYN physicians who would be in the 1985 placement cycle. The Secretary chose those sites which were the 81 most needy areas (Koontz deposition, p. 11). Although it is admitted that other methods could have been used to select the sites for the HPOL, there is no evidence to suggest that the method used by the Secretary was arbitrary, capricious or not in accordance with the law. Further, plaintiff's decision to make available no OB/GYN placement in Pittsburgh during the 1985 placement cycle does not evidence an act by plaintiff which was arbitrary, capricious or not in accordance with the law. Pursuant to 5 U.S.C. Section 706, an agency's action must be upheld unless that action is "arbitrary, capricious, an abuse of discretion," or otherwise contrary to law. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed. 2d 136 (1971). Great deference must be given to the interpretation given a statute by the officers or agency charged with its administration. *Environmental Protection Agency v. National Crushed Stone Association,* 449 U.S. 64, 83, 101 S.Ct. 295, 306, 66 L.Ed.2d 268 (1980). The depositions and documents submitted by plaintiff

outline the method in which the sites were chosen for placement on the HPOL and that method was consistent with the policies and purposes of the Public Health Service Act. Further, with respect to defendant's assertion that the Secretary did not take into consideration the characteristics which increase the probability of the members remaining to serve the area upon completion of the assignment, it is noted that during the early decision alternative period, and even beyond then until April 15, 1985, the defendant had great latitude to match with any site on the HPOL for her specialty anywhere in the country. It was not until after April 15, 1985, that the Secretary assigned her to a specific site.

■ Defendant's second argument in support of her motion for summary judgment is that the HPOL is invalid because its adoption and use violated the rule making requirements of the Administrative Procedures Act. Pursuant to Section 553 of the Administrative Procedures Act an agency must be give notice of a proposed rule making and allow for a comment period before a rule can be implemented. 5 U.S.C. Section 553. A rule is defined as follows:

> Rule means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefore or of valuations, costs, or accounting, or practices bearing on any of the foregoing.

5 U.S.C. 551(4).

Plaintiff argues that the HPOL is not a rule but rather is a list, or a factual compilation, of the highest priority HMSAs on a state-by-state basis. Plaintiff points out that the HPOL is subject to constant evaluation and change based on a continuous stream of incoming data, including input from scholarship recipients. Plaintiff argues that the fluid and changeable nature of the HPOL belies its characterization as a

"rule" under the APA. Plaintiff states that the notice and comment provisions that apply to rule making are incompatible with the repeated adjustments to the HPOL, based on updated factual information. The court notes that during the 1985 placement cycle, the HPOL was amended on two occasions. (Hayden deposition, p. 18). Plaintiff argues that to require the Department of Health and Human Services to publish each HPOL and each revision to the HPOL for notice and comment, would seriously undermine the entire NHSC scholarship program by making it virtually impossible for the agency to make placements within the placement year.

The record reveals that the HPOL is not a rule but rather a compilation of the highest priority HMSAs and that it is constantly changing. Compilation of the HPOL is similar to the Secretary of Interior's designation of highway construction areas in public parks, which the Supreme Court held was "plainly not an exercise of a rule making function," in the case of *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971). Since the HPOL is not a rule, the agency is not required to comply with the rule making requirements of Section 553 of the Administrative Procedures Act. Therefore plaintiff is entitled to summary judgment against defendant based on her admitted breach of the NHSC Scholarship Program Contract by failing to begin her service obligation required by that contract. Judgment in the amount of $281,-082.66 in damages as of April 1, 1988, plus interest at the rate of $52.24 per day should be entered against defendant. Defendant's motion for summary judgment should be denied.

In accordance with the Magistrates Act, 28 U.S.C. Section 636(b)(1)(B) and (C), and Rule 4 of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.

Dated: August 11, 1988.