UNITED STATES of America, Plaintiff,

v.

Charles D. HUGELMEYER, Defendant.

No. CIV 90–317–PHX–EHC.

United States District Court,
D. Arizona.

Aug. 22, 1991.

Suzanne M. Chynoweth, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff.

Stephen W. Myers, T. Dawn Farrison, Myers, Barnes & Jenkins, Phoenix, Ariz., for defendant.

## ORDER

CARROLL, District Judge.

Plaintiff United States brought this action to recover against defendant Dr. Charles D. Hugelmeyer for his default on an agreement with the National Health Service Corps Scholarship Program. Pursuant to this program, defendant obtained $50,448.00 in scholarship funds for four years of medical school and in return agreed to serve for four years in a designated Health Manpower Shortage Area ("HMSA"). This program, codified at 42 U.S.C. § 254*l, et seq.*, was enacted for the purpose of providing an adequate supply of health professionals for service in geographic areas suffering from a shortage of health care. As part of this agreement, if the defendant failed for any reason to complete his term in the Public Health Service, the defendant would be liable for three times the amount received plus interest, reduced *pro rata* by the amount of time served; this amount is due one year from the date of breach. 42 U.S.C. § 254*o* (b)(1).

After completing his residency in family practice, the defendant was initially assigned by Health and Human Services (HSS) to a clinic in Oregon in 1985. The defendant refused this placement as he wished to finish a residency in emergency medicine, the HHS declared him in default, and the parties signed a forbearance agreement postponing the date of his service. He was then assigned to the Public Health Service Indian Medical Center in Phoenix, or the Phoenix Indian Medical Center ("PIMC"), in July 1987. He served for one year before resigning, and now works for the Maricopa Medical Center. For this default, the United States seeks $307,917.98 plus interest from March 31, 1991.

It is undisputed that the defendant breached the conditions of his scholarship by leaving the service after one year and was properly placed in default. The defendant does not dispute his liability for the

principal amount advanced plus reasonable interest.[1] In dispute are the defendant's various affirmative defenses to the treble damages provided by statute.

Initially, the government argues that the damages provision of the agreement (and statute) states that if the scholarship recipient breaches "for any reason", the recipient may be declared in breach, and that affirmative defenses are therefore irrelevant. § C(3) of the award; 42 U.S.C. § 254*o* (b)(1). *See United States v. Gross*, 725 F.Supp. 892, 894 (W.D.La.1989) ("The default provision ... is indifferent as to the reason why an individual fails to begin performing his service obligation"). Regardless of this statutory language, this Court will address the defendant's affirmative defenses.

Defendant first claims that the contract is ambiguous and does not comply with 42 U.S.C. § 254 *l*. That section directs the Secretary of HHS to provide a "*clear* explanation of the damages to which the United States is entitled under section 254*o* ... in the case of the individual's breach of the contract." (Emphasis added). The contract provides that if the applicant:

3. Fails to begin or complete the period of obligated service incurred under this contract for any reason other than those in paragraph 2 of this section [failure to maintain academic standing, dismissal from educational institution], the United States shall be entitled to recover an amount equal to three times the scholarship funds awarded, plus interest, as determined by the formula

$$A = 3 o \frac{(t - s)}{t}$$

in which

'A' is the amount the United States is entitled to recover,

'o' is the sum of the amounts paid to or on behalf of the applicant and the interest on such amounts which would be payable if at the time the amounts were

---

1. The defendant does not maintain that HHS breached its obligations under the agreement: (1) HHS provided the scholarship funds, (2) HHS accepted the defendant into the NHSC, (3)

and HHS deferred his performance so that he could complete a residency. Defendant relies on affirmative defenses to avoid the contractual obligations.

paid they were loans bearing interest at the maximum legal prevailing rate, as determined by the Treasurer of the United States,

   't' is the total number of months in the applicant's period of obligated service, and

   's' is the number of months of such period served by the application in accordance with Section 752 of the Public Health Service Act.
The amount the United States is entitled to recover shall be paid within one year of the date the Secretary determines that the applicant has failed to begin or complete the period of obligated service.

(Tab 1, plaintiff's appendix to statement of facts). The defendant contends that the algebraic formula and the prefatory statement conflict. Due to the placement of commas in the prefatory statement, "the United States shall be entitled to recover an amount equal to three times the scholarship funds awarded, plus interest, . . .", the defendant argues that this led him to believe that the treble damages would be calculated before the addition of interest, while the algebraic formula indicates that the interest is added before the damages are trebled. While the prefatory statement is not clear on the calculation of the interest, the algebraic formula is extremely clear that interest is added to the principal amount before trebling.

Further, while no other courts have addressed the issue of whether the prefatory language and the algebraic formula conflict, other courts which have awarded damages under this section have awarded treble interest. *See United States v. Martin*, 710 F.Supp. 271 (C.D.Cal.1989) (defendant received $30,241.00 from NHSC; four and ½ years after default, judgment in the principal amount of $90,723, plus $121,084.98 in interest); *United States v. Cooper*, 699 F.Supp. 69 (W.D.Pa.1988) (defendant received $42,267.00; less than two

years after default, judgment in the principal sum of $126,801.00 plus interest of $134,326.95); *United States v. Conway*, 686 F.Supp. 571 (E.D.La.1988), *aff'd* 868 F.2d 1269 (5th Cir.1989) (defendant received $79,567.09; less than four years after default, judgment in the amount of $520,993.86); *United States v. Padavano*, 664 F.Supp. 28 (D.Me.1987) (defendant received $54,309; government seeking $162,927 in principal, $166,633.17 in interest at the rate of 16.76%, less than four years after default).

Second, the defendant claims he did not understand the algebraic formula, "had no inkling as to the severity of the penalties", and would not have entered the program if he had understood the full import of the penalties. However, medical students do have at least limited mathematical backgrounds, and the defendant most certainly could have deciphered the algebraic formula with the variables defined if he would have attempted to do so.

■ Next, the defendant argues that the damage provision is unenforceable as a penalty. While admitting that "courts have consistently held that the treble damage provisions set for NHSC contracts are not penalties, but rather, are enforceable liquidated damage clauses",[2] the defendant argues the great disparity between the amount he received, $50,448.00, and the amount now sought by the United States, $307,917.98 plus interest from March 31, 1991, is an unreasonable violation of his substantive due process rights.

■ The defendant cites various cases holding that damages are not allowable if "grossly excessive" or "oppressive". However, statutory intent, rather than general contract principles, govern the interpretation of the relationship between the Secretary of Health and Human Services and the scholarship recipient. *Rendleman v. Bowen*, 860 F.2d 1537, 1542 (9th Cir.1988);

---

**2.** The Eastern District of Michigan held in *United States v. Swanson*, 618 F.Supp. 1231, 1243–44 (E.D.Mich.1985):

To estimate the damages which would be suffered by the loss of the services of a trained osteopathic physician for a three year period in

a medically undeserved area is difficult, if not impossible, to accurately determine.... the damages which the government would be entitled to receive ... fair and reasonable attempt to fix just compensation in the event of a breach.

*United States v. Hatcher,* 922 F.2d 1402, 1406 (9th Cir.1991). "The only terms contained in the written agreement signed by a recipient are those required by the statute." *Rendleman, supra.*

Further, defendant's argument that the penalties violate due process *in this case* is illogical: in *all* cases where a penalty is imposed that penalty is three times the amount received by the recipient, plus interest. The fact that the defendant in this case was given a relatively large sum of money is irrelevant to this Court's inquiry. Defendants in other cases where treble damages awarded had received even greater amounts. *See Conway, supra,* (defendant received $79,567.09); *Padavano, supra,* (defendant received $54,309).

The defendant is correct that all courts that have considered the issue of whether the damages provision is a penalty or unconscionable have rejected those contentions and found the provision enforceable. *United States v. Fowler,* 659 F.Supp. 624 (N.D.Cal.1987) ("section 254*o* (b)(1) is an enforceable liquidated damages clause"), *aff'd,* 849 F.2d 1476 (9th Cir.1988).

Further, § 254*o* (c)(2) provides for a total or partial waiver of the penalty if repayment would be an "extreme hardship ... and ... would be unconscionable." Defendant does not argue that he is entitled to a waiver under this section.

■ Next, the defendant argues that the damages provision violates the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.,* due to the inadequate interest and finance disclosure discussed above. Although the parties dispute whether the TILA covers this transaction,[3] this is immaterial: the defendant does not demonstrate why the contract fails to conform to the TILA, or what provision is violated. Further, the discussion above demonstrates that the provisions were not in fact ambiguous.

■ Finally, the defendant argues that the substandard working conditions in the Phoenix Indian Medical Center made his fulfillment of the contract unconscionable. The defendant contends that the staffing was grossly inadequate, the physical facilities were overwhelmed, the facility was inadequately equipped, and the center did not have a proper triage system in the emergency department. He claims that his "morale plummeted", that Kevin Yeskey, acting Chairman of the Department, ignored his attempts to improve conditions, and the defendant suffered professionally and physically. Although the defendant does not explicitly raise the defense that misrepresentations induced him to agree to serve at PIMC, he does contend that he was assured that the PIMC was a full-service tertiary care hospital with a "full compliment of backup specialists and ancillary services." (Defendant's Affidavit, page 5).

---

**3.** The government argues that this statute only applies to consumer credit transactions and consumer leasing with regard to consumer goods and services. 15 U.S.C. § 1601. The defendant, on the other hand, argues that 15 U.S.C. § 1602 and Regulation Z § 226.1(c) [12 C.F.R. § 226.1(c)] apply to NHSC contracts; however, this is not obvious from the face of either the statute or the regulation, and the defendant does not elaborate. In fact, the definition of "creditor" in section 1602 encompasses those who regularly extend credit pursuant to agreements payable in more than four installments or where a finance charge may be required. This does not appear to extend to the federal government under the terms of this agreement which requires service in exchange for the scholarship, and a fixed debt payable one year from the time of default.

The government also contends that § 1610(d) specifically provides that the statute does "not affect the validity or enforceability of any contract or obligation under ... Federal law." The defendant points out that TILA has been applied to adjust finance charges in cases involving government contracts. *In re Pinder,* 83 B.R. 905 (Bkrtcy.E.D.Pa.1988).

The government also argues that transactions which exceed $25,000 are specifically exempted from the TILA, 15 U.S.C. § 1603(3). The defendant argues that each contract he signed (a total of four) involved less than $25,000, subjecting each contract to the stricture of the TILA. In *Farmer v. First Bank (N.A.)—Pipestone,* 760 F.2d 872 (8th Cir.1985), the Eighth Circuit treated four agricultural loans as separate transactions, and did not aggregate their amount for the purpose of determine the applicability of TILA. Similarly, here, the loans received by the defendant would be treated as separate loans under the TILA.

The government contends that the evidence does not support the defendant's claim that he left due to the working conditions: (1) the defendant's resignation letter cites in part financial considerations for his separation, (2) he left the PIMC to enter a position which paid over four times the salary he received at PIMC, (3) the defendant never requested a transfer to another site with more tolerable working conditions, and (4) the defendant's principal complaints while at PIMC were regarding the pay and the type of work (less emergency medicine than he wanted). Further, the government attaches the affidavit of Kevin Yeskey, then acting Chairman of the Department, which refutes the defendant's contentions regarding the working conditions.

More importantly, the government argues that defendant's claim of unsuitable working conditions is irrelevant: the defendant was not guaranteed a suitable work environment in either the original contract or the forbearance agreement.[4] Moreover, the defendant does not allege that he agreed to sign the contract or the forbearance agreement based on any representation of the working conditions.

This Court must uphold the agency decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *United States v. Hatcher, supra,* at 1405–06. None of the defendant's affirmative defenses are valid and the agency's decision to declare the defendant in default was not arbitrary.

Accordingly,

IT IS ORDERED granting the government's motion for summary judgment (document # 18).

IT IS FURTHER ORDERED denying the defendant's motion for summary judgment (document # 24).

IT IS FURTHER ORDERED denying the defendant's motion to strike unpublished opinions as moot (document # 23).

IT IS FURTHER ORDERED that the government submit a proposed form of judgment, setting forth the principal and interest calculations separately. The defendant may submit any objections to the proposed form of judgment within 10 days of service upon the defendant.

---

**4.** The government cites an unpublished decision, *United States v. Wilkerson,* No. 86–281–CIV–T–13–A (M.D.Fla.1986), in which the District Court held that unsuitable and unprofessional working conditions did not release the recipient from his payment obligation because there was no showing that any representations regarding his working conditions induced him to enter into the contract.