UNITED STATES of America, Plaintiff,

v.

**Valerie Elise WILLIAMS, M.D., Defendant.**

No. CV 93–1514.

United States District Court, E.D. New York.

Sept. 19, 1994.

Zachary W. Carter, U.S. Atty. E.D.N.Y. by Christopher G. Lehmann, Asst. U.S. Atty., Brooklyn, NY, for plaintiff.

Shirley F. Gajewski, New York City, for defendant.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge:

On behalf of the United States Public Health Service ("PHS"), a division of the Department of Health and Human Services ("HHS"), the United States of America moves pursuant to Fed.R.Civ.P. 56(a) for summary judgment in its favor on the complaint. The underlying complaint seeks a judgment against the defendant in the sum of $267,552.30, arising out of the alleged default by the defendant of her obligations under three one-year National Health Service Scholarship awards. The defendant opposes the motion, and moves for summary judgment in her favor, contending that the PHS's actions made it impossible for her to perform her contractual obligations under the scholarship agreements.

## BACKGROUND

The defendant Valerie Elise Williams, M.D. ("defendant" or "Williams") was a licensed practical nurse who wanted to become a doctor and render health care to the indigent. She was admitted to the Dartmouth Medical School, and while there applied for and was accepted into the National Health Service Corps ("NHSC") Scholarship Program. This scholarship program was established by Congress to address the geographic maldistribution of health care professionals in the United States. In exchange for receiving scholarships covering their educational costs and living expenses, NHSC scholarship recipients commit themselves to one year of obligated service for each year they receive a scholarship, but must in any event serve at least two years. Such obligated service is to be performed in a "health manpower shortage area" to which the recipient is assigned to by the Secretary of Health and Human Services. See 42 U.S.C. § 254l, and see generally 42 U.S.C. §§ 254d—254p; 42 C.F.R. part 62 (setting forth the statutory and regulatory scheme governing NHSC scholarships and repayment).

According to the statute, failure of the NHSC scholarship recipient to complete the obligated period of service constitutes a breach of the scholarship agreement, and entitles the United States to recover an amount equal to three times the amount of the scholarship monies given to the recipient plus interest, discounted for any amount of time actually served by the recipient. See 42 U.S.C. § 254o.

Williams received three one-year scholarship awards for the academic years 1977–1978, 1979–1980 and 1980–1981, totaling $45,023. She thus committed herself to three years of service with the NHSC. Her first scholarship award, for the year 1977–1978, was granted under the Public Health and National Health Service Corps ("PH/NHSC") Scholarship Training Program, 42 U.S.C. § 234 (repealed by section 408(b)(1) of the Health Professionals Educational Assistance Act of 1976, Pub.L. No. 94–484, 1976 U.S.C.C.A.N. (90 Stat.) 2243), the precursor to the present scholarship program, entitled the National Health Service Corps Scholarship Program, 42 U.S.C. § 254l. Pursuant to the provisions of the former statute, the United States was only allowed to recover an amount equal to the amount of the scholarship awarded, in the event of a breach by the recipient. The present statute provides, inter alia, for treble recovery by the United States upon breach by the recipient.

After completing medical school, Williams requested and was granted two year-long deferments from her NHSC service obligation, in order that she may pursue a residency in Obstetrics/Gynecology at the Downstate Medical Center in New York. The statute and regulations provide for three year-long deferments from commencing the service obligation upon completion of medical school. 42 U.S.C. § 254m(b)(5); 42 C.F.R. § 62.9. Williams, however, failed to request a deferment for a third year. NHSC sent

several notices to her requesting that she file a deferment. These notices went unanswered by Williams. In a letter dated September 30, 1983, Williams was declared by the HHS to be in default of her scholarship obligations. A schedule for the repayment of $143,045.95 was sent to her in January, 1994.

Subsequently, Williams and the HHS entered into a forbearance agreement. The forbearance agreement was between Williams and the HHS Bureau of Health Care Delivery and Assistance. (For the purposes of this decision, references to any PHS or HHS subdivisions shall be to the "agency"). Under the terms of the forbearance agreement, the agency agreed to forebear with respect to collection of the financial obligation incurred by Williams due to her default, in exchange for Williams' agreement to fulfill her NHSC service obligation in a high priority health manpower shortage area to be determined by the NHSC. Interest during the time of the forbearance would continue to accrue on Williams' debt. If Williams failed to complete her NHSC service obligation as described in the forbearance agreement, the entire amount of her financial obligation would become due and owing.

The NHSC assigned Williams to Matty Hersee Hospital, in Meridian, Mississippi, and she began service there on August 1, 1985. However, on November 6, 1985, the administrator of the hospital made a request to the NHSC that Williams be immediately terminated from duty because she was disruptive and unprofessional. After investigating the allegations, the NHSC terminated Williams from service at Matty Hersee Hospital on December 6, 1985. The agency then notified Williams that she was in default of her service obligation under the forbearance agreement, and that collection of the debt she owed to the agency would begin immediately.

In 1988, the agency and Williams entered into a Special Repayment Program Agreement. The Special Repayment Program ("SRP"), set forth in the notes accompanying 42 U.S.C. § 254o and codified in the regulations at 42 C.F.R. §§ 61.72–61.76, was established under section 204 of the Public Health Service Amendments of 1987, Pub.L. No. 100–177, 1987 U.S.C.C.A.N. (101 Stat.) 986, and provides an opportunity for persons who were in breach of their PH/NHSC or NHSC scholarship agreements as of November 1, 1987 to satisfy their payment obligations. Under the provisions of the SRP, the individual in breach of the scholarship contract or forbearance agreement agrees to perform their NHSC service obligation at a site on the agency's "Health Manpower Shortage Area Placement Opportunity List" ("HPOL"). This list of sites is developed by the NHSC. Credit is given to a scholarship recipient for any time already served in fulfillment of the NHSC service obligation. However, if a participant fails to fulfill the remainder of their service obligation under the SRP, only one half of the time served is credited towards the fulfillment of their service obligation. See 42 C.F.R. § 62.75.

Williams was matched under the SRP to the St. Charles Health Council in St. Charles, Virginia, where she was to perform the remainder of her service obligation, a period of approximately two years and eight months. She only performed one year of the obligation, being terminated from the position on June 12, 1990. The agency next attempted to match Williams to the Somerset County for Progressive Enterprises, Inc. ("SCOPE") in Princess Anne, Maryland, but that facility allegedly withdrew its offer of employment because of problems arising during the course of negotiating an employment contract with Williams. The agency then reassigned Williams to a site in St. Louis, Missouri, and advised Williams to contact the facility by November 30, 1990.

Williams never contacted the facility in St. Louis, and the agency referred the matter to the Department of Justice for collection. A complaint was filed with this Court on April 6, 1993 seeking a judgment against Williams in the amount of $298,044.48.

**MOTIONS BEFORE THE COURT.**

The United States moves for summary judgment on the complaint, essentially contending that Williams has defaulted on her service obligation under the terms of the statute, and is therefore liable for the full amount of her debt obligation.

According to the government, Williams was obligated to perform three years of service in exchange for receiving the three scholarship awards. The government contends that the language of 42 U.S.C. § 254o expressly specifies that a scholarship recipient's failure to complete his or her service obligation constitutes a breach of the scholarship agreement. In addition, the government contends Williams failed to rectify her default by completing her three year service obligation under either the forbearance agreement or Special Repayment Program.

As of February 15, 1994, Williams' debt obligation has been computed by the agency to be $267,552.30. *See* Declaration of Donald W. Potoon, Chief of the Debt Management Branch of the PHS. This amount accounts for 475 days of service actually performed by Williams—128 days at Matty Hersee Hospital under the forbearance agreement and 347 days of service at the St. Charles Health Council under the SRP.

In calculating Williams' debt amount, the agency first credited 365 days of Williams' service towards satisfaction of her one year service obligation under the PH/NHSC Scholarship awarded to her for the year 1977–1978, as required by 42 C.F.R. § 62.75(c). The remainder of her performed service—110 days—was then credited towards the remaining two years of her NHSC Scholarship service obligation. The formula in the regulatory provisions of the SRP that is used to calculate the amount of debt Williams owes, 42 C.F.R. § 62.75, incorporates the treble damages provision of the statute. However, because Williams defaulted, the formula provides that only one half of the days Williams actually served (55) can be credited towards her remaining service obligation.

Williams opposes the government's motion, and moves for summary judgment in her favor. In answering the complaint, Williams pleaded four counterclaims against the government, three based on breach of contract and one for defamation. The allegations in these four counterclaims are also the allegations Williams sets forth in opposing the government's summary judgment motion, and in support of her own motion.

Williams basically contends that the NHSC made it impossible for her to perform her service obligation. According to Williams, the NHSC failed to timely provide her with a list of available sites that she could visit beforehand in order to ascertain their suitability, and placed her in problematic sites where she could not properly and ethically perform her medical service.

Williams' first counterclaim alleges that the agency intentionally took steps to make it difficult for Williams to find placement at a site suitable to her. She contends that the agency kept sending mail to her at the wrong address. Such mail included the agency's May, 1983 request for a deferment, and a "Placement Package" containing information on available sites for 1985. She further alleges that she contacted the agency in order to get a "Placement Packet," but that the agency would not send her one.

According to Williams, the agency's action in not providing her with the "Placement Packet" placed the burden on her to ascertain available sites and make flight arrangements to visit these sites in a very short time. Williams alleges the agency's actions were arbitrary and capricious, and moreover contends the agency breached its contractual duty to advise her of available sites and to assist her in a timely fashion to visit the sites prior to her entering into an employment arrangement at the site.

Williams' second counterclaim concerns the Matty Hersee Hospital site. According to Williams, she was informed of the position at the site "at the last possible moment," and was forced to accept a position without adequately assessing the site in order to avoid being held in default. Although Williams had visited other sites that she claims were in manpower shortage areas, the agency told her those sites were not available. Williams claims the agency's actions with respect to her being placed at Matty Hersee Hospital were a direct breach of contract.

Moreover, Williams alleges that the agency was aware of the many problems she encountered at the site. Among these problems were lack of adequate care to the indigent patients, and the high mortality rate at the

site. Williams claims she was labeled "disruptive" by the hospital administration because she spoke out against a hospital policy of transferring indigent OB/GYN patients to a non OB/GYN service in order to receive insurance payments and medicaid funds that were available at the non OB/GYN service.

According to Williams, the hospital's practices placed her in the position of violating her professional oath, which was not part of the NHSC scholarship agreement. When she objected to what she perceived to be wrongful practices, the hospital requested that she be terminated. By placing her at a site where it was impossible for her to perform her service obligation in a professional manner, and by not addressing her concerns of the conditions at the site, Williams contends that the agency committed a breach of contract.

The third counterclaim by Williams concerns her service under the SRP at the St. Charles Health Council. Williams alleges that she went to St. Charles under an agreement that there would be another doctor at this site besides her. She does not state, however, with whom this alleged agreement was made. After a week at this site, the other doctor left, and Williams was forced to work double duty, including being on call practically all of the time. Williams contends that the agency and facility knew this doctor would leave when they placed her. At this time Williams alleges that she was pregnant.

Moreover, Williams alleges that the physician who was subsequently hired by the facility, G. Danny Kimberlin, M.D., was an "impaired" physician with a drug and alcohol problem. Williams contacted the agency about this situation, and asked the facility for a written release of liability for any acts of Dr. Kimberlin, and that she not share patients with him. Williams alleges that the facility's response to her requests was to harass her, and to order her not to speak to anyone about Dr. Kimberlin. Soon thereafter, Williams was placed on bed rest and maternity leave. The OB/GYN unit at St. Charles was closed several months later.

In addition, Williams alleges that the St. Charles facility used her medicaid number improperly and without her permission while she was on maternity leave. As a result of this, Williams contends earnings in her name were reported to the IRS which were not properly her earnings. Williams reported this to the agency, and she contends the agency did nothing about it. Again, Williams alleges that by placing her at a facility where it was impossible for her to perform her service, the agency committed a breach of contract.

After the St. Charles facility closed, Williams alleges that she and the agency attempted to negotiate a placement for her with SCOPE. Williams further alleges that she moved with her family to Salisbury, Maryland expecting to begin work at SCOPE. However, when Williams refused to sign an employment agreement with the facility because there was no cap on the amount of hours she would have been required to work, Williams contends the facility withdrew its offer to employ her. This last event occurred in August, 1990. Williams alleges she never heard again from the agency. In October, 1990 Williams accepted a position at the Bedford Women's facility in Bedford, New York. She claims that this facility serves an indigent population of incarcerated women, and that similar facilities have been deemed to be manpower shortage areas by the NHSC.

The final counterclaim by Williams alleges that the agency's employees "wrongfully, arbitrarily and capriciously engaged in conduct that was destined to hold the defendant up to ridicule, contempt and scorn and to destroy defendant's reputation in her profession." In support of this allegation, Williams contends that the agency's spokesperson told the Meridian Star newspaper that Williams was dismissed from Matty Hersee Hospital because of "incompetence"; that the agency's employees placed in Williams personal file statements that she was terminated by the St. Charles Council, when in fact the facility was closed while Williams was on maternity leave; that her personal record contains statements that she lost an employment offer with SCOPE, Inc. due to problems arising between her and the facility during employment contract negotiations; and that

Williams was reassigned to a facility in St. Louis and did not appear for duty.

As a result of these false publications by the agency's employees, Williams contends her reputation was injured. As to damages on her counterclaims, Williams seeks $60,000 in actual damages, $500,000 in compensatory damages, and $5 million in punitive damages.

## DISCUSSION

### Standard for Summary Judgment.

■ A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990), and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990); *Liscio v. Warren,* 901 F.2d 274, 276 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

■ Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)); *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *Converse v. General Motors Corp.,* 893 F.2d 513, 514 (2d Cir.1990). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Rattner v. Netburn,* 930 F.2d 204 (2d Cir.1991).

■ However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Western World,* 922 F.2d at 121. Although the non-moving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment, Fed. R.Civ.P. 56(c) and (e) provide that the non-moving party cannot rest on the pleadings, but must set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions on file showing there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Finally, in reviewing a summary judgment motion the Court is charged with the function of "issue finding", not "issue resolution." *Eye Assocs., P.C. v. IncomRx Sys. Ltd. Partnership,* 912 F.2d 23, 27 (2d Cir.1990).

### Breach of the NHSC Scholarship Agreement.

■ The factual background, as set forth above, would normally preclude a motion for summary judgment, as multiple issues of disputed facts are raised by the defendant which implicate a breach of the implied covenant of good faith by the United States. The implied covenant of good faith requires that each party to a contract will not intentionally and purposefully do anything to prevent the other party from carrying out the agreement on its part. *See e.g., M/A–COM Security Corp. v. Galesi,* 904 F.2d 134, 136 (2d Cir. 1990); *Geler v. National Westminster Bank USA,* 770 F.Supp. 210, 215 (S.D.N.Y.1991) (citing cases, applying New York law).

■ However, this case is not governed by contract law, because the conditions imposed upon an NHSC scholarship arise by statutory directive and not by a negotiated agreement between the parties. As a result, statutory intent and not common law contract principles controls the interpretation of the conditions imposed on the scholarship recipient and the NHSC. Accordingly, the issues raised by Williams regarding breach of the covenant of good faith and impossibility of performance are not material to the dispute at issue. *See Rendleman v. Bowen,* 860 F.2d 1537, 1541–42 (9th Cir.1988). Rather, the provisions of the statute govern the interpre-

tation of the parties' rights under the agreement. *Id.*

In *Rendleman,* the plaintiff was a doctor who received a NHSC scholarship and a subsequent three year deferment from performing his service obligation. The plaintiff dropped out of the deferment program, and went to work at a hospital that was not a designated health manpower shortage area. The NHSC assigned the plaintiff to another hospital, at which he refused to serve. After being placed in default, the plaintiff brought an action for a declaration that he was not in default. On cross-motions for summary judgment, the district held in favor of the plaintiff, on the basis that the NHSC did not make a good faith effort to work with the plaintiff in placing him at a site more to his liking, and that the agency actively worked against the plaintiff's interests.

The Ninth Circuit reversed the district court, holding that contract law was not determinative of the plaintiff's claims:

> [T]he plain language of the statute demonstrates that Congress did not intend that contract principles govern the interpretation of the relationship between the Secretary and a scholarship recipient. The only terms contained in the written agreement signed by the recipient are those required by the statute—that the recipient agrees to accept the aid, that upon completion of the educational program the recipient will serve in an HMSA, and that the recipient will pay treble damages if found in default on the obligation. Other conditions that affect scholarship recipients' service ... are not included in the contract, although Congress addressed those issues in the statute. Thus, the obligations of the Secretary are to be based on statutory and not contractual principles.

*Rendleman,* 860 F.2d at 1542. The Ninth Circuit directed the district court to enter summary judgment in favor of the agency on the issue of the plaintiff's default. *See also U.S. v. Hatcher,* 922 F.2d 1402, 1406–07 (9th Cir.1991) (contract-based defenses that agency breached its duties under NHSC scholarship agreement and misled recipient held to be inapplicable as defense to action for recovery of treble damages under statute).

The rationale of *Rendleman* has been followed by other courts that have been presented with contract-based defenses to an action by the United States to recover treble damages under the NHSC Scholarship Program statute. *See e.g., U.S. v. Arron,* 954 F.2d 249, 251 (5th Cir.1992) (contract claim by recipient in action by government to recover treble damages "does not raise a genuine issue of fact material to the dispute"); *U.S. v. Melendez,* 944 F.2d 216, 218–19 (5th Cir.1991) (counterclaim by recipient that agency's breach of its obligations under the scholarship agreement prevented recipient from completing his service obligation rejected); *U.S. v. Hugelmeyer,* 774 F.Supp. 559, 561 (D.Ariz.1991) (claims in defense to action for treble damages that scholarship contract provisions are oppressive and grossly excessive rejected); *accord U.S. v. Turner,* 660 F.Supp. 1323, 1329–30 (E.D.N.Y.1987) (recipient's traditional contractual rights not at issue when government seeks to recover treble damages under NHSC scholarship statute; court rejected defense of economic duress and granted summary judgment in favor of the United States).

■ Although the Second Circuit has apparently not ruled on the issue, this Court is of the view that the rationale of *Turner* and *Rendleman* are correct. Accordingly, Williams' counterclaims which allege that the agency's breach of contract made it impossible for her to fulfill her service obligation under the scholarship agreements are rejected as not material to the disposition of the present motion for summary judgment. Further, the first three counterclaims are dismissed as a matter of law. Any defense to the underlying action must arise from the terms of the statute itself.

The terms of the statute are clear. 42 U.S.C. § 254*l* provides that the written scholarship contract shall contain, *inter alia,* an agreement by the individual recipient to accept provision of the scholarship; maintain enrollment in a designated course of study and complete the course of study; maintain an acceptable level of academic standing while enrolled in the course of study; and serve as a provider of primary health services in a health professional shortage area

for a time period equal to one year for each school year for which the recipient received a scholarship, or two years, whichever is greater. Each scholarship contract must also include the obligations of the Secretary of the HHS, and a statement of damages to which the United States is entitled to under 42 U.S.C. § 254o in the event of a breach by the recipient.

Section 254o governs a breach of the scholarship contract. Section 254o (b)(1)(A) provides that "if an individual breaches his written contract by failing (for any reason not specified in subsection (a) of this section or section 254p(d) of this title) either to begin such individual's service obligation under section 254l ... or to complete such service obligation, the United States shall be entitled to recover from the individual" an amount that is determined according to the formula given in the statute. Subsection (a) concerns failure of the recipient to complete their course of study in school after receiving a scholarship, and section 254p(d) concerns breach of certain private practice loans, both of which are not applicable to Williams. Accordingly, since Williams failed to complete her service obligation, she is liable to the United States for damages calculated according to the formula.

■ The fact that Williams entered into the Special Repayment Program does not alter her liability under the statute, but does change the calculation of the amount of damages she owes. The SRP provides for relief of liability under section 254o only if the recipient agrees to complete the remainder of his or her service obligation at a site on the Health Manpower Shortage Area Placement Opportunity List. Failure to complete the remainder of the service obligation subjects the individual recipient to the original liability under the statute. Moreover, the regulations promulgated under the statute provide that in cases where a recipient breaches an SRP contract by completing part of the remaining service, only one-half of the time they served will be credited towards their liability.

Thus, under the terms of the statute and regulations Williams is liable to the United States for damages calculated according to the formula set forth in the SRP regulations, at 42 C.F.R. § 62.75. Summary judgment must, therefore, be entered in favor of the United States.

■ Having found Williams liable on the debt, the Court next considers whether her liability is in the full amount of $267,552.30, or whether it may be waived or reduced by the Secretary. The statute provides for a partial or total waiver or suspension of any service obligation or payment by the HHS "whenever compliance by the individual is impossible or would involve extreme hardship to the individual and if enforcement of such obligation with respect to any individual would be unconscionable." 42 U.S.C. § 254o (d)(2).

The regulations promulgated pursuant to the statute prescribe the criteria to be considered by the HHS when deciding waiver requests. With regard to impossibility as the ground for waiver, the regulations provide:

> Compliance by a participant with a service or payment obligation will be considered impossible if the Secretary determines, on the basis of information and documentation as may be required, that the participant suffers from a physical or mental disability resulting in the permanent inability of the participant to perform the service or other activities which would be necessary to comply with the obligation.

42 C.F.R. § 62.12(c). With regard to undue hardship and unconscionability as the grounds for waiver, the regulations provide that the HHS is to consider:

> (1) The participant's present financial resources and obligations;
>
> (2) The participant's estimated future financial resources and obligations; and
>
> (3) The extent to which the participant has problems of a personal nature, such as physical or mental disability, terminal illness in the immediate family which so intrude on the participant's present and future ability to perform as to raise a

314

presumption that the individual will be unable to perform the obligation incurred. 42 C.F.R. § 62.12(d).

The above criteria determining eligibility for waiver are exclusive, and represent the agencies' interpretation of both the underlying statute, 42 U.S.C. § 254o, and the regulation it was delegated to promulgate thereto, 42 C.F.R. § 62.12(b). Challenges to the agency's interpretation of the regulation as overly restrictive and in conflict with the language and purpose of section 254o have been rejected. *See e.g., Rendleman v. Shalala,* 21 F.3d 957, 961–62 (9th Cir.1994) (agency's interpretation of the regulation is not erroneous or inconsistent with the regulation, and is not arbitrary and capricious or manifestly contrary to the statute); *Buongiorno v. Sullivan,* 912 F.2d 504, 508–10 (D.C.Cir.1990) (same); *accord U.S. v. McManus,* 846 F.Supp. 1283, 1293–94 (M.D.N.C. 1994).

■ The record in this case does not indicate that the Secretary of the HHS considered whether Williams' liability may be subject to waiver or reduction, and Williams has not raised the waiver issue in her counterclaims or answer. However, given Williams' commitment to serving indigent persons it is this Court's view that she may lack the financial resources to pay the debt, and that her situation may merit a partial or total waiver or suspension of her financial obligation. The Court believes a remand of this case to the Secretary of HHS for the limited consideration of the waiver or suspension of Williams' debt is appropriate. In this regard, the Court notes that in *Rendleman* the Ninth Circuit, after remanding to the district court and directing that court to enter summary judgment in favor of the United States, also stated that the district court could further remand the case to the agency for its limited consideration of the waiver of liability issue. *See Rendleman,* 860 F.2d at 1544.

■ Finally, Williams' fourth counterclaim alleging defamation is also of no avail to her, as it must be dismissed as a matter of law. The United States and its agencies have not waived their sovereign immunity from suits for slander and libel, *see* 28 U.S.C. § 2680(h), nor has the United States waived such immunity in this case. Accordingly, this court does not have subject matter jurisdiction to hear the counterclaim for defamation. *See* 28 U.S.C. § 1346(b). *See also Guccione v. U.S.,* 847 F.2d 1031, 1033 (2d Cir.1988); *B & A Marine v. American Foreign Shipping Co.,* 831 F.Supp. 91, 93 (E.D.N.Y.1993).

Accordingly, for the reasons stated in this decision, it is hereby

**ORDERED,** that the plaintiff's motion for summary judgment on the complaint pursuant to Fed.R.Civ.P. 56(a) is granted, to the extent that a judgment of liability in favor of the United States and against the defendant Valerie Elise Williams, M.D. is entered due to Williams' default under 42 U.S.C. § 254o, and is otherwise denied; it is further

**ORDERED,** that the defendant's motion for summary judgment pursuant to Fed. R.Civ.P. 56(b) is denied in its entirety, and that the defendant's counterclaims are dismissed as a matter of law; and it is further

**ORDERED,** that this case is remanded to the Secretary of HHS for her limited consideration of a waiver of Williams' obligations pursuant to 42 U.S.C. § 254o (d)(2).

The Clerk of the Court is advised that this action closes the case.

**SO ORDERED.**