UNITED STATES of America, Plaintiff

v.

**Wayne H. MARTIN, Defendant.**

**No. CV 88–476–RSWL.**

United States District Court,
C.D. California.

Feb. 16, 1989.

---

272

Hugh W. Blanchard, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff.

Ronald M. Lebow, Beverly Hills, Cal., for defendant.

## ORDER AND JUDGMENT

LEW, District Judge.

Plaintiff and defendant in the above captioned action have each filed a motion for summary judgment. Each contends that there is no significant factual dispute and claims entitlement to judgment as a matter of law. The motions were originally set for oral argument on February 13, 1989 but were removed from the Court's law and motion calendar for disposition based on the papers filed pursuant to Fed.R. Civ.P. 78.

Now, having read and considered the papers filed by each side and having reviewed the relevant controlling authorities, the Court issues the following orders:

Plaintiff's motion for summary judgment is GRANTED. Defendant's motion for summary judgment is DENIED. The Court makes the following findings of fact and conclusions of law in support of these orders:

### FINDINGS OF FACT

1. While a student attending Howard University Medical School, defendant Dr. Wayne H. Martin applied for and received a National Health Service Corps ("NHSC") scholarship for the 1979–80 academic year.

2. The scholarship was provided to defendant pursuant to the terms of the "Scholarship Program Contract" signed by defendant on May 16, 1989.

3. The terms of the scholarship contract state that plaintiff is obligated to provide defendant with medical school tuition and a stipend for living expenses during defendant's first year of medical school. The contract also states that defendant is obligated to serve one year with the National Service Health Corps for each year the scholarship was provided. The contract states that defendant's minimum obligation is two years.

4. The contract specifically provides and that defendant must serve out the service obligation as a "commissioned officer in the Regular or Reserve Corps of the Public Health Service or as a civilian member of the Corps in a health manpower shortage area as designated under Section 332 of the Public Health Service Act to which the applicant is assigned ..." by the Secretary of Health and Human Services.

5. The contract also provides that if defendant "(f)ails to begin or complete the period of obligated service incurred under this contract ... the United States shall be entitled to recover an amount equal to three times the scholarship funds awarded" plus interest.

6. The contract further provides that the "Secretary may waive or suspend the applicant's service or payment obligation incurred under this contract if:

a. compliance by the applicant with the terms and conditions of this contract is impossible or would involve extreme hardship, and

b. enforcement of such obligation would be unconscionable."

7. Defendant subsequently applied for a continuation of the NHSC Scholarship for the academic years 1980–81 and 1981–82.

8. In accordance with the scholarship application and continuation applications, defendant received $30,241.00 in scholarship support from NHSC.

9. Dr. Martin graduated from medical school in June of 1983 and commenced a one year postgraduate residency program in internal medicine at the Veteran's Administration Wadsworth Medical Center. The NHSC granted Dr. Martin a one year deferment of the commencement of his service obligation to allow Dr. Martin to complete the residency program. The deferment ran for the period July 1, 1983 through June 30, 1984.

10. On June 20, 1983 Dr. Martin was provided with a site selection questionnaire by the NHSC. The purpose of the questionnaire was to allow Dr. Martin to indicate his placement preference for his mandatory NHSC service.

11. Dr. Martin failed to return the site selection questionnaire to the NHSC by the specified return date.

12. Without any indication of site preference from Dr. Martin, the NHSC assigned Dr. Martin to the Indian Health Services (IHS) in South Dakota. Dr. Martin was notified of the assignment in a letter dated November 1, 1983.

13. By letters dated November 7, 1983 and April 4, 1984 the NHSC provided information to Dr. Martin concerning his placement with IHS. Dr. Martin did not respond to these letters.

14. By letter dated April 17, 1984 the NHSC notified Dr. Martin that because of his failure to respond to the letters concerning his placement, he was going to be placed in default on his service obligation. Dr. Martin did not respond.

15. By letter dated June 24, 1984 the NHSC notified Dr. Martin that he was being placed in default effective July 1, 1984 with his debt becoming due one year later: July 1, 1985.

16. Sometime during the summer of 1984 Dr. Martin was accepted for a three-year opthamology residency program at the Martin Luther King/Drew Medical Center. The NHSC first learned of Dr. Martin's residency after receipt of a letter from Dr. Martin's attorney dated July 27, 1987.

17. Dr. Martin completed the three residency program on July 1, 1987.

18. Based on Dr. Martin's failure to perform in accordance with the scholarship contract or pay the liquidated damage amount, the United States filed this action seeking damages for breach of contract.

18. Dr. Martin claims as an affirmative defense to the government's claims that he is unsuited for and not competent in the area of primary care and that all NHSC placements are in the area of primary care. He thus argues that it would be impossible to perform the contract he entered into with the NHSC.

19. Dr. Martin claims as an affirmative defense to the government's claims that the contract he entered into with the NHSC is unconscionable and therefore unenforceable.

20. Dr. Martin claims as an affirmative defense to the government's claims that the NHSC was under an obligation to place him in an urban area for the fulfillment of his service obligation and that failing to provide an urban placement estops the government from enforcing the scholarship contract.

## CONCLUSIONS OF LAW

1. Summary judgment is appropriate when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56.

2. When a motion for summary judgment is made, the opposing party may not rest upon the mere allegations or denials of his pleading but must respond by producing affidavits or declarations showing there is a genuine issue for trial. Summary judgment is appropriate when the non-moving party fails to make a sufficient showing on an element of case for which he will have the burden of proof at trial. *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

3. The National Health Service Corps ("NHSC") Scholarship Program was established by Congress to address the maldistribution of health care manpower in the United States. *See* Pub.L. No. 94–484, 90 Stat. 2270 (1976) (codified as amended at 42 U.S.C. §§ 254d–254q). Under the program, eligible students in professional health degree programs receive scholarships that cover their educational expenses and living expenses while in medical school. In return, the student agrees to serve in a health manpower shortage area as designated by the Secretary of the Department of Health and Human Services. The student also agrees that if he or she defaults on the promise to serve, he or she will liable for liquidated damages in the amount of three times the scholarship monies awarded plus interest to be determined by a formula provided in the statute.

4. Under the terms of the scholarship contract signed by Dr. Martin, Dr. Martin was obligated to serve three years service for the NHSC at a site assigned by the Secretary of Health and Human Services.

5. Dr. Martin's obligation to serve commenced immediately after the termination of the approved one year deferment in June 30, 1984.

6. Having failed to begin service as directed to by the NHSC, Dr. Martin defaulted on the service obligation. Having done so, Dr. Martin's only remaining obligation is to repay the scholarship monies he received at the statutorily specified rate.

7. The statutorily prescribed rate for return of the funds is equal to three times the amount of scholarship funds actually dispensed plus interest at as defined at 42 U.S.C. § 254o.

8. Defendant's impossibility defense is meritless. First, the defense of impossibility does not apply to contracts, such as the one at issue here, in which the terms have been established by statute. *See Rendleman v. Bowen*, 860 F.2d 1537 (9th Cir.1988). Second, even if the defense were to apply, the contract is not impossible to perform. Dr. Martin contends that he is incapable of performing primary care and that only primary care placements are available through the NHSC. This argument does not withstand close scrutiny. Dr. Martin has submitted no evidence other than his own declaration in support of the claim of incompetence. The declaration is insufficient to establish impossibility because it necessarily reflects Dr. Martin's subjective view of his own competence and contractual impossibility is determined on an objective standard. *See Opera Co. of Boston v. Wolf Trap Foundation*, 817 F.2d 1094, 1099 (4th Cir.1987). Thus, Dr. Martin has failed present facts sufficient to establish a defense of impossibility. Further, as a matter of law, defendant was competent to practice medicine on behalf of the NHSC after one year of post-graduate medical training. 42 C.F.R. § 62.9(b).

9. Defendant's unconscionability claim is meritless. First, the defense of unconscionability, like the defense of impossibility does not apply to contracts, such as the one at issue here, in which the terms have been established by statute. *See Rendleman v. Bowen*, 860 F.2d 1537 (9th Cir.1988). Moreover, even if the doctrine were to apply, the contract at issue is not unconscionable. To establish unconscionability defendant must show an absence of meaningful choice by one party and contract terms that are unreasonably favorable to the other party. *Premier Wine & Spirits v. E. & J Gallo Winery*, 644

F.Supp. 1431, 140 (E.D.Cal.1986). Defendant has failed to establish either.

10. The United States is not estopped from enforcing the scholarship contract against defendant. Whether or not some sort of oral commitment as to the location of Dr. Martin's assignment was made by officials at NHSC, the Department of Health and Human Services is not required to allow defendant perform his service in an urban community. No such requirement is present in or may be read into the scholarship contract or the legislation that created the scholarship program.

11. Plaintiff has no obligation to waive defendant's payment obligation. Defendant has failed to articulate any legal authority in support of such an obligation and the Court's own review of relevant authority indicates that no such obligation exists. *See Rendleman v. Bowen,* 860 F.2d 1537 (9th Cir.1988).

12. The contract does not establish involuntary servitude in violation of the Thirteenth Amendment. *United States v. Redovan,* 656 F.Supp. 121 (E.D.Pa.1986). Involuntary servitude occurs when the law or physical force is used or threatened to force another to work against his or her will for the benefit of another. *Wicks v. Southern Pacific Co.,* 231 F.2d 130, 138 (9th Cir.1956). Here, Dr. Martin is not being forced to labor on behalf of plaintiff or any other person or entity. Plaintiff has simply exercised his option to trigger the payback provisions of the scholarship contact rather than serve in the NHSC. Such an exercise is in no way proscribed by the Thirteenth Amendment.

13. Post default attempts by Dr. Martin and his attorney to arrange for an alternative service arrangement are irrelevant to the obligation owed by Dr. Martin under the terms of the NHSC contract.

14. Defendant is presently indebted to the plaintiff in the principal amount of $90,723 plus interest in the amount of $121,084.98 compiled through December 31, 1988 with interest accruing thereafter at a daily rate of $42.57 until entry of the judgment.