**UNITED STATES of America**

v.

**Donald Charles GROSS.**

**Civ. A. No. 88–1582.**

United States District Court,
W.D. Louisiana,
Shreveport Division.

Oct. 10, 1989.

Josette L. Cassiere, Asst. U.S. Atty., & U.S. Atty. Joseph S. Cage Jr., Office of the U.S. Atty., Dept. of Justice, Shreveport, La., for plaintiff.

Lawrence W. Pettiette Jr., Blanchard, Walker, O'Quin & Roberts, Shreveport, La., for defendant.

## MEMORANDUM RULING

TOM STAGG, Chief Judge.

Presently before the court is a motion for summary judgment filed on behalf of the United States of America (hereinafter "plaintiff" or "the government") against Donald Charles Gross, M.D. (hereinafter "defendant" or "Dr. Gross"). On July 18, 1989, the magistrate issued a Report and Recommendation advising that the plaintiff's motion be denied. Plaintiff objected to the magistrate's Report and Recommendation, and the motion is now before this court for *de novo* review.

This is a suit by plaintiff to collect on a National Health Service Corps ("NHSC") Scholarship Program Loan granted to defendant by the NHSC. The facts show that defendant, an aspiring medical student, applied for and was awarded a NHSC scholarship in 1978. Defendant received NHSC funds for two school years ending in June of 1979. Defendant continued his medical training without NHSC assistance, and graduated from medical school in 1982. Plaintiff alleges that defendant has defaulted on the loan. The defendant has counterclaimed for the return of $60,000 in payments on the loan, as well as $1,500 in moving expenses and $25,000 for harassment.

The NHSC Scholarship Program was enacted by Congress for the express purpose of assuring an adequate supply of trained health professionals for service in the NHSC in geographic areas suffering from health manpower shortages. Under the program, eligible students received scholar-

ships that cover their educational expenses and include a stipend for living expenses. 42 U.S.C. § 254*l* (g). In return, the student agrees to serve in the Health Manpower Shortage Area ("HMSA") to which he is assigned by the Secretary of Health and Human Services (hereinafter "Secretary"). *Id.* at 254*l* (f)(1)(B)(iv). The student's period of obligated service is equal to one year for each year the student receives a scholarship, or a minimum of two years, whichever is greater. *Id.* This service obligation may be met: (1) as a commissioned officer in the public health service or a civilian employee of the NHSC; (2) in private practice in a HMSA (referred to as the "private practice option"); or (3) as an employee of a non-federal entity such as a state-run community clinic. *Id.* at § 254m.

Every student must submit with his or her scholarship application a signed written contract agreeing to accept payment of the scholarship and to serve for his or her period of obligated service in a HMSA. 42 U.S.C. § 254*l* (b)(4). The law directs that the Secretary assign individuals to HMSAs in accordance with their written contract. 42 U.S.C. § 254m(d). An HMSA may consist of a geographical region, a specified population group within an area, or a particular medical facility. *Id.* at § 254e(a).

The ultimate decision of where to place an applicant is left to the discretion of the Secretary. However, the Secretary is obligated by statute to seek to assign to an area, an applicant who has (and whose spouse, if any, has) those characteristics which increase the probability of the applicants remaining to serve the area upon completion of the assignment. 42 U.S.C. § 254f(f). This obligation of the Secretary does not, however, provide an applicant with a right to any particular placement. Rather, it constitutes a mandatory consideration of the overall administration of the assignment process.

The legislative history makes it clear that the NHSC Scholarship Program was not created solely to subsidize the medical education of future health care practitioners:

> The committee wishes to emphasize in the strongest possible terms that it does not view the National Health Service Corps Scholarship Program as a mechanism solely intended to subsidize health professional education. Rather, in return for substantial subsidization of the cost of education, the committee views the National Health Service Corps Scholarship Program as a means to overcome a geographic maldistribution of health professionals.

Senate Report 94–887, 94th Cong. 1st Sess. p. 201 (1975), U.S.Code Cong. & Admin. News 1976, 4947.

If a recipient breaches his contract by failing to begin or complete a scholarship service obligation, he is placed in default. Once the recipient is in default status, the service option terminates and the recipient must repay the debt financially. 42 U.S.C. § 254*o* (b)(1); 42 C.F.R. § 62.10(c). The relevant provisions of the statute provide that the defaulter must repay within one year damages equal to three times the amount of the scholarship award plus interest after taking into account any service performed. The formula used to determine the amount of plaintiff's recovery in the event of a breach is set forth in 42 U.S.C. § 254*o* (b)(1).

In recommending that plaintiff's motion be denied, the magistrate believed genuine issues of material fact were raised with respect to whether defendant was properly placed in default. Defendant's service under his contract was due to begin on July 1, 1983, since the statute and regulations require scholarship recipients to begin serving upon the completion of their approved post-graduate training. 42 U.S.C. § 254m(b)(5)(A) and 42 C.F.R. § 62.8(b)(1). As mentioned, defendant graduated from medical school in July of 1982. His request for a one-year deferment of the start date of the service obligation was approved to permit him to participate in the first year of surgical residency training. It is undisputed that the defendant's service under his contract was due after he completed the one-year of surgery training.

The record reflects that considerable efforts were made to assist defendant in

identifying a site at which he could perform his service obligation beginning in July of 1983. By letter dated October 12, 1982, the Secretary notified Dr. Gross that he had been assigned to Region IV. This letter also provided a detailed explanation of the process to be used in matching to a site in that region. It stated that Dr. Gross was responsible for contacting the Regional Office to learn of potential vacancies at which he could serve his obligation either as a federal employee or as a private practitioner. Importantly, it also stated that if Dr. Gross was interested in serving under the Private Practice Option (hereinafter "PPO"), he should contact the Regional Office to identify the HMSA in which he wished to serve. He was urged to select a site early since matching would be on a "first come, first served" basis. Finally, the Secretary informed Dr. Gross in a letter that if he was not matched to a site by April 15, 1983, he would be assigned to a site.

Despite receiving additional information about placement and his need to match to a site, Dr. Gross failed to do so by the April 15 deadline. Consequently, to assure that he would match to a site at which to serve in time to begin performing his service obligation on July 1, 1983, the Secretary notified defendant by letter dated April 20, 1983, that he was assigned to Evergreen, Alabama. In May of 1983, defendant notified the director of the clinic in Evergreen, Ms. Marilyn Lambert, that he would not perform his obligation at that clinic. Accordingly, he was notified by letter dated June 28, 1983, that he would be in default of his service obligation effective July 1, 1983 for refusing to perform.

The magistrate's finding that the defendant was placed in default before he was obligated to begin service is not correct. The June 28, 1983 letter to defendant provides as follows:

> The National Health Service Corps (NHSC) Scholarship Program understands that you do not intend to begin your service obligation as of July 1, 1983. Therefore, you are declared in default of the conditions of your award *as of that date.* (Emphasis added.)

The record, therefore, does not support the magistrate's conclusion. Defendant was not in default until July 1, 1983.

As set forth above, defendant was obligated to serve in a HMSA to which he was assigned. 42 U.S.C. §§ 254*l* (f)(1)(B)(iv), 254m(d); National Health Service Corps Scholarship Program Contract § B(4). Congress has plainly given the Secretary authority and discretion to make a final determination on the placement of scholarship recipients. *Rendleman v. Bowen,* 860 F.2d 1537, 1543 (9th Cir.1988). Indeed, any other interpretation would risk undermining the scheme so carefully crafted by Congress to provide much-needed medical services in less desirable areas.

By failing to begin service at the assigned HMSA in Evergreen, Alabama, the defendant was in default. Once the recipient is in default status, the service option terminates and the recipient must repay the debt financially. *United States v. Redovan,* 656 F.Supp. 121, 126 (E.D.Pa.1986). The default provision, 42 U.S.C. § 254*o* (b)(1) is indifferent as to the reason why an individual fails to begin performing his service obligation. It simply states that "if an individual breaches his written contract by failing (for any reason ...) either to begin ... or to complete such service obligation, the United States shall be entitled to recover from the individual...." The magistrate, therefore, erred by failing to attach the proper legal significance to defendant's refusal to accept his service assignment. There is no dispute that the defendant was assigned to Evergreen, Alabama, or that he failed to begin serving at that site on July 1, 1983. The predicate facts necessary to establish the government's entitlement to recover are, therefore, not in dispute.

The magistrate also concluded that genuine issues of material fact existed as to whether the defendant's letters of March 3, 1983 and May 30, 1983 constitute an application to serve under the PPO. However, as a matter of law, once defendant was placed in default, he had no right to perform his service obligation under the PPO or under any other method of service. His

only remaining obligation with the NHSC was to pay his financial obligation. *United States v. Martin,* 710 F.Supp. 271 (C.D.Calif.1989). To satisfy his service obligation, defendant was required to serve as a member of the corps, or enter into a written agreement with the Secretary under which he would perform his service obligation under the PPO. 42 U.S.C. § 254n(a). Defendant has submitted no evidence in response to plaintiff's motion that he ever submitted a PPO agreement for his work in Tuscaloosa. Be that as it may, to date, the Secretary has not entered into such an agreement with defendant; thus, he has not been released from the obligation to serve as a member of the corps. Accordingly, defendant's practice in Tuscaloosa was not as a NHSC member, and the Secretary is precluded by law from awarding defendant any credit toward his service obligation for his private practice of medicine in Tuscaloosa. As one court has noted:

> [T]o permit a recipient of scholarship funds to make an agreement with NHSC for such funds and then to permit the recipient to decide what service will be rendered and where it will be rendered will result in absolute chaos in any such program. Such actions would be intolerable and would most certainly destroy any such program.

*United States v. Conway,* 686 F.Supp. 571, 572 (E.D.La.1988).

Even if defendant would be entitled to credit for work performed subsequent to his default, defendant has not satisfied the court that such practice was located in a HMSA. The Secretary is absolutely precluded from awarding credit for a practice that is not located in a HMSA. 42 U.S.C. § 254n(a). In response to this contention of the government, defendant states that he was told by an employee of the NHSC that anywhere in the State of Alabama except Birmingham was considered an HMSA. Even if such representation were made, the court finds that the representations as to the area designated as a HMSA is not the type of "affirmative misconduct" on the part of the government which would give rise to estoppel. Estoppel is rarely, if ever, a valid defense against the government absent such affirmative misconduct. *See Heckler v. Community Health Services of Crawford Co.,* 467 U.S. 51, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984).

The court also notes that the areas in Alabama which are designated as HMSAs were provided to defendant in the June 15, 1982 *Federal Register,* which was mailed to defendant on or about June 21, 1982. Review of the areas designated as HMSAs clearly shows that the entire state, other than Birmingham, was *not* designated. The cover letter to this mailing warned defendant to verify through the regional office whether a HMSA listed in the *Federal Register* had retained its HMSA designation.

In sum, defendant incurred an obligation to serve in the assigned HMSA upon completion of his medical training. There is no genuine issue of material fact as to the defendant's default on that obligation. Defendant's complaints regarding "[t]his bureaucratic nightmare" found in his affidavit are insufficient to defeat plaintiff's motion. Accordingly, plaintiff is entitled to a judgment against the defendant in accordance with the statutory formula.

As mentioned, defendant has counterclaimed, seeking return of the payments already made as well as other relief. The undisputed facts, however, show that defendant defaulted on his obligation to the NHSC. Therefore, he is not entitled to the return of the money already paid. With respect to defendant's other claims, the analysis set forth above demonstrates that those claims lack factual and legal support. Summary judgment is, therefore, appropriate.

In response to plaintiff's objections to the magistrate's Report and Recommendation, the defendant filed a motion to strike the affidavit of Mr. Richard C. Lee. This affidavit was filed in support of plaintiff's motion for summary judgment. The affidavit states that Mr. Lee is director of the Office of Shortage Designation, Bureau of Health Care Delivery and Assistance, Health Resources and Services Administra-

tion, Public Health Service, Department of Health and Human Services. The affidavit states that he is responsible for supervising activity leading to the designation of areas as federal HMSAs. The affidavit further states that he is custodian of the records pertaining to HMSA designation.

Defendant's motion states that Mr. Lee's affidavit is merely a conclusory allegation not based upon personal knowledge. The motion is without merit. The court can perceive of no more authoritative source for information regarding the designation of HMSAs than Mr. Lee. Mr. Lee is attesting to a fact which he and his office are specifically charged to determine. As such, the affidavit is competent proof, and defendant's motion to strike is DENIED.

An order consistent with the terms of this memorandum ruling shall issue herewith.

THUS DONE AND SIGNED.

### ORDER

For the reasons presented in the foregoing memorandum ruling,

IT IS ORDERED that plaintiff's motion for summary judgment is GRANTED;

IT IS FURTHER ORDERED that the defendant's motion to strike the affidavit of Richard C. Lee is DENIED;

IT IS FURTHER ORDERED that plaintiff submit to the court a proposed judgment, approved as to form and content by counsel for the defendant, within 15 days of the date of this ruling.

DATED AND SIGNED at Shreveport, Louisiana, this 7th day of October, 1989.