**UNITED STATES of America**

**v.**

**Christopher A. BLOOM, M.D.**

**Civil Action No. 95–1475.**

United States District Court,
E.D. Louisiana.

May 2, 1996.

Eneid A. Francis, U.S. Attorney's Office, New Orleans, LA, for plaintiff and counterclaimant.

Paul Stephen Adams, Paul Stephen Adams, Attorney at Law, New Orleans, LA, for defendant.

### ORDER AND REASONS GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

VANCE, District Judge.

This matter is before the Court on the motion for summary judgment by the United States of America ("plaintiff") against Christopher A. Bloom, M.D. ("Bloom"). The motion was submitted on the briefs without oral argument. Based on the Court's consideration of the parties' memoranda, affidavits, exhibits and the applicable law, the motion is granted for the following reasons.

### I. *Introduction*

This is a suit by plaintiff to collect on a National Health Service Corps ("NHSC") scholarship program loan granted to defendant by the NHSC. The United States alleges that Bloom, a medical doctor, failed to comply with his service obligation after receiving $58,188.10 in NHSC scholarship program funds. The government claims that it is entitled to statutory treble damages, plus interest under a formula set out in 42 U.S.C. § 254o(b)(1)(A).

The defendant, on the other hand, has counterclaimed against the government for $1.5 million in compensatory damages, plus punitive damages and attorney's fees. He also claims to be entitled to an injunction against further collection activity and mandatory relief in the form of either a waiver of his service obligation or reinstatement into the NHSC program.

The NHSC scholarship program was enacted by Congress for the express purpose of assuring an adequate supply of trained health professionals for service in the NHSC in geographic areas suffering from health

manpower shortages. Under the program, eligible students receive scholarships that cover their educational expenses, including a stipend for living expenses. 42 U.S.C. § 254*l*(g). In return, the student agrees to serve in the Health Professional Shortage Area ("HPSA") to which he is assigned by the Secretary of Health and Human Services (the "Secretary"). *Id.* at 254*l*(f)(1)(B)(iv). The student's period of obligated service is equal to one year for each year the student receives a scholarship. *Id.* The service obligation may be met in one of three ways: (1) as a commissioned officer of the Public Health Service or a civil service employee, 42 U.S.C. § 254m(b)(1)(A); (2) as an employee of the site to which the scholar is assigned by the NHSC (Private Practice Assignment), 42 U.S.C. § 254m(b)(1)(B); or (3) under a Private Practice Option ("PPO"), 42 U.S.C. § 254n.

If a recipient breaches his contract by failing to begin or complete a scholarship service obligation, he is placed in default. Once the recipient is in default status, the service option terminates, and the recipient must repay the debt financially. 42 U.S.C. § 254o(b)(1); 42 C.F.R. § 62.10(c). The defaulter must repay within one year damages equal to three times the amount of the scholarship award, plus interest, after taking into account any service performed. *See* 42 U.S.C. § 254o(b)(1)(A).

## II. *Factual Background*

It is undisputed that Bloom applied for a medical school scholarship through the NHSC scholarship program in April of 1979 and signed an agreement to participate in the program on August 31, 1979. *See* Plaintiff's Exs. 5, 6. In return for scholarship funds to pay for his medical school education, Bloom agreed to serve one year of obligated service for each year of scholarship in an HPSA designated by the Secretary. *See* Plaintiff's Ex. 6. Bloom received scholarship contract awards for the academic years 1978–80 through 1982–83, inclusive. Plaintiff's Exs. 8, 9, 10. By accepting four years of scholarship funding, defendant incurred a four-year service obligation. *See* Plaintiff's Ex. 11.

Bloom was graduated from medical school in 1983. He thereafter applied for and received a three-year deferment of his service obligation to pursue graduate training in internal medicine. Plaintiff's Exs. 12, 13, 14, 15. Upon completion of his residency, Bloom received a one-year suspension of his service obligation because of personal problems. Plaintiff's Exs. 16, 17, 18. He was required to begin his service obligation on or before July 1, 1987. Plaintiff's Ex. 18. It is undisputed that Bloom did not serve out his four-year commitment.

The historical facts surrounding Bloom's failure to serve out his commitment are as follows. Defendant requested placement at the New Orleans Health Corporation's Desire–Florida Neighborhood Health Clinic ("DFNHC") under a salaried PPO. *See* Defendant's Ex. 14. Defendant was notified that this request was conditionally approved by letter dated September 19, 1986. *Id.* The letter expressly told the defendant not to make any major financial commitments until he received final confirmation of his placement, which awaited a needs-demand analysis. *Id.* Nevertheless, on September 26, 1986, defendant terminated his employment at Baptist Hospital Immediate Care Clinic. *See* Defendant's Ex. 15. Although defendant claims in his affidavit that he quit his job to pursue the placement at DFNHC based on a misrepresentation by the NHSC, the record does not support his contention. He apparently claims that the NHSC had misrepresented to him that it had performed a site analysis study before conditionally approving his placement at DFNHC. *See* Defendant's Ex. 11, Bloom Affid. at p. 3. Rather, the NHSC's letter of September 19, 1986 specifically apprised defendant not to take any major steps until final approval of his placement, which required that a needs analysis be done, the results of which could result in the cancellation of his placement. *See* Defendant's Ex. 14. NHSC did not misrepresent to defendant that it had conducted the site analysis, and indeed defendant had already quit his job before final approval of his placement was obtained.

On December 16, 1986, Bloom was advised that his request for DFNHC placement had

been finally approved with "a tentative beginning date of July 1987." Defendant's Ex. 16. Defendant claims that NHSC in Dallas told him he could begin his service immediately, citing the December 16, 1986 letter. Defendant's Memorandum at 6. However, this letter says nothing about permitting him to start his placement immediately. Rather, it enclosed a written agreement that was to be signed and notarized before defendant could receive any credit toward his service obligation. *See* Defendant's Ex. 16. Defendant completed the service agreement, which he returned on March 23, 1987. The agreement recited a start date of July 1, 1987. *See* Defendant's Ex. 1.

In July of 1987, when defendant's placement was to begin, the Desire Clinic was experiencing financial difficulties and could not hire him on a full-time basis. *See* Plaintiff's Ex. 21. From July 1987 through December 1987, defendant worked elsewhere for the New Orleans Health Corporation, apparently earning some credit toward his service obligation. *See* Defendant's Ex. 11 at 4. However, during that period, no full-time position at the Desire Clinic materialized because of a lack of funding. *Id.* Defendant resigned from his position under the PPO on December 31, 1987 after serving 184 days of his four-year service obligation. *See* Defendant's Ex. 20.

On December 28, 1987, in response to an inquiry from the Department of Health and Human Services ("DHHS"), Bloom wrote a letter stating that because the Desire Clinic could not offer him full-time employment, and he was now a father, had bought a home in New Orleans and a transfer would disrupt his wife's medical school career, he wanted to make alternative arrangements. *See* Plaintiff's Ex. 21. He proposed that he reimburse the government his tuition over time or that the NHSC assign him somewhere in New Orleans. *Id.* In mid-January 1988, DHHS responded to him by telephone. Three options were apparently discussed: one, a transfer option; two, that defendant could negotiate with the City of New Orleans to fulfill his service obligation; or three, that he request a one-year deferment. *See* Plaintiff's Ex. 22. By that time, defendant had committed to a one-year contract with the private Browne–McHardy clinic. Bloom wrote to DHHS in February of 1988 that "he agree[d] to a one-year deferment request" but that he could not commit to a transfer unless he could coordinate the location to fit his wife's career needs. *See* Plaintiff's Ex. 22. He asked for a meeting the next month to discuss his problems. *Id.* Apparently DHHS did not respond immediately to this letter, and defendant did not request a transfer to another location.

In June of 1988, defendant wrote to NHSC complaining about favoritism in the placement process and that NHSC was unresponsive to him. *See* Plaintiff's Ex. 23. He further stated he had been unable to find an alternative placement in New Orleans and asked to have his service obligation waived on the grounds of "extreme hardship on my family and my future career." *Id.* Defendant contended that his service obligation was "incompatible with [his] family ties," that he had bought property in New Orleans, and that fulfilling his obligation would damage his professional reputation and cause him financial hardship. *Id.* In response, DHHS wrote to defendant on July 21, 1988, advising him that once his one-year deferment expired, he should plan to return to service in 1989. *See* Plaintiff's Ex. 24. The letter told him of NHSC's transfer policy and to respond by August 15, 1988 whether he wished to request a transfer or to buy out his service obligation. *See* Plaintiff's Ex. 24. Defendant did not request a transfer. DHHS contacted him again on August 30, 1988 and advised him to respond by September 16 if he wished to request a transfer or he would be put in default. *See* Plaintiff's Ex. 25. Defendant again requested a waiver of his service obligation. *See* Plaintiff's Exs. 26, 27.

By letter dated October 6, 1988, DHHS notified defendant's attorney that the waiver request was denied on the grounds that there was no evidence that compliance with either the service or payment obligation was impossible or would cause extreme hardship. *See* Plaintiff's Ex. 28. Defendant's attorney disputed the finding of no hardship, this time supporting the waiver request with a doctor's letter indicating that Bloom suffered from

depression and a self-prepared financial statement. *See* Plaintiff's Ex. 29. The NHSC confirmed its position, but noted that the NHSC would consider transferring the defendant to a site in Louisiana based on site availability, if defendant were interested and requested a transfer. *See* Plaintiff's Ex. 30. The defendant did not respond. The NHSC nevertheless located a placement site for him at the Bayou Comprehensive Medical Center in Lake Charles, Louisiana. Defendant was notified of this by telephone on February 21, 1989. This was confirmed by letter dated February 27, 1989. *See* Plaintiff's Ex. 31. Bloom responded by requesting that all further correspondence be directed to his attorney. *See* Plaintiff's Ex. 32. Bloom's attorney notified the NHSC that defendant did not intend to accept the assignment. *See* Plaintiff's Ex. 33. The government advised defendant that his refusal to accept the assignment left no alternative but to recommend that he be placed in default. *Id.* Defendant was placed in default of his NHSC scholarship obligation effective February 21, 1989, the day he declined the transfer assignment. *See* Plaintiff's Ex. 34.

Defendant thereafter made voluntary payments toward his NHSC scholarship debt of $15,500. *See* Plaintiff's Ex. 1, Affid. of Donald Pooton, at ¶ 5. In addition, defendant's 1990 federal tax refund of $2,868.56 was offset and credited against his NHSC scholarship debt. *Id.* and Plaintiff's Ex. 35. Payments and credits totalling $18,368.56 were applied to defendant's NHSC scholarship debt. *See* Plaintiff's Ex. 1, Affid. of Donald Pooton at ¶ 5. He was also given credit to reflect the 184 days he performed of his service obligation. *See* Plaintiff's Ex. 4, Affid. of Norris S. Lewis, at ¶ 5. As of January 31, 1996, the government claims that Bloom owes $520,403.37 in principal and accrued interest, with interest continuing to accrue at $73.24 a day. *See* Plaintiff's Ex. 1, Affid. of Donald Pooton at ¶ 6.

## III. *Legal Analysis*

An NHSC scholarship recipient breaches his scholarship contract when he fails to begin or complete his service obligation. *See* 42 U.S.C. § 254o(b)(1); *United States v. Ar-* *ron,* 954 F.2d 249, 252 (5th Cir.1992). Once a scholar is in default, the service option ends, and he is liable for damages under the statutory formula. *See* 42 U.S.C. § 254o(b)(1); 42 C.F.R. § 62.10(c). It is undisputed that Bloom did not complete his service obligation at DFNHC, and he refused to serve at the Bayou Comprehensive Medical Center in Lake Charles, Louisiana, to which the NHSC assigned him, after he declined several opportunities to request a transfer to a site that he may have preferred. Bloom contends, however, that he should be absolved from paying damages because the government should be estopped from proceeding against him or because its conduct was arbitrary, capricious, and amounted to an abuse of discretion.

### A. *Estoppel*

Federal law is clear that estoppel is rarely, if ever, a valid defense against the government, absent proof of affirmative misconduct by a government agent. *Heckler v. Community Health Services,* 467 U.S. 51, 60–63, 104 S.Ct. 2218, 2224–25, 81 L.Ed.2d 42 (1984); *United States v. Marine Shale Processors,* 81 F.3d 1329 (5th Cir.1996); *Duthu v. Sullivan,* 886 F.2d 97 (5th Cir.1989); *United States v. Vanhorn,* 20 F.3d 104, 112 n. 19 (4th Cir.1994). Estoppel against the government may not be established by oral representations. *Vanhorn,* 20 F.3d 104, 112 n. 19; *Duthu,* 886 F.2d at 99; *United States v. Gross,* 725 F.Supp. 892, 895 (W.D.La.1989). At a minimum, the government agent must intentionally or recklessly mislead the estoppel claimant; mere negligence is insufficient. *Marine Shale Processors,* 81 F.3d at 1349–50.

Bloom has not created an issue of material fact as to any misconduct by the government that would establish a basis for his estoppel claim. Bloom's assertions of government "misconduct" prior to his placement at the Desire Clinic are of questionable relevance because the government did not put him in default until he refused the placement in Lake Charles. *See U.S. v. Arron,* at 252 (scholar's claim regarding NHSC's dereliction in 1984 irrelevant when he was not sued until he refused a placement in 1985).

In any event, the record shows that there was no "misconduct" or "misrepresentation" by the NHSC that led defendant to accept the Desire placement. The government did not misrepresent to Bloom that it had done a needs study before he quit his job, and there is no evidence that it had any control over the financial viability of the Desire Clinic. *See* Defendant's Exs. 14, 15. Further, defendant has not established that a needs analysis was never done. Indeed, there is no evidence that the government was aware of the precarious financial condition of the Desire Clinic or that it actively attempted to mislead Bloom. Further, Bloom has cited no authority imposing a duty on the NHSC to Bloom to investigate the economic viability of his placement. While the NHSC may have such a duty to "Corps members" (*See* 42 U.S.C. § 254a(1)(D)), Bloom was not assigned to serve at DFNHC as a "Corps member." Defendant chose to serve there under the Private Practice Option ("PPO"), and, as such, was not a "Corps member," which is defined as federal civil servants, Public Health Service commissioned officers and private practice assignees serving in the NHSC. 42 U.S.C. § 254d(a). Under 42 U.S.C. § 254n, which governs the private practice option, there is no obligation upon the government to investigate the fiscal soundness of any entity with which the scholar associates in private practice.

█ Nor is there any evidence of "misconduct" by the NHSC after Bloom resigned from the New Orleans Health Corporation's PPO in December 1987. The DHHS apparently made an inquiry to Bloom in late 1987, to which he responded on December 28, 1987 by reporting that he wanted to make alternative arrangements since the Desire Clinic could not hire him full time. *See* Plaintiff's Ex. 21. Bloom apparently had a telephone conversation with NHSC in mid-January 1988, in which the options of seeking a one-year deferment of his service obligation, a transfer, or another placement in New Orleans were discussed. *See* Plaintiff's Ex. 22. Bloom's response was a February 10, 1988 letter in which he "agree[d] to a one-year deferment request" but would not commit to seeking a transfer unless his wife's professional needs could be accommodated. *Id.*

In the letter, he asked for a meeting the next month to discuss his problem. Bloom relies on the assertion that no meeting was arranged and that his telephone calls were not returned as a basis for estoppel. However, this does not amount to affirmative misconduct; it involved no misrepresentations or affirmative behavior towards him at all. Negligence is insufficient to establish estoppel against the government. *See Marine Shale Processors,* 81 F.3d at 1349–50; *Kennedy v. United States,* 965 F.2d 413, 421 (7th Cir.1992). Moreover, once defendant elected to defer his service obligation for a year, any urgency in dealing which his complaints was diminished.

By June of 1988, four months after Bloom's February 10, 1988 letter, he had already begun to seek a hardship waiver of his service obligation and did not retreat from that position thereafter, despite efforts by the government to inform and assist him in seeking a transfer. *See* Plaintiff's Exs. 23–33. Bloom's June 1988 letter describes no affirmative misconduct by NHSC in the four months since his last correspondence. While his letter expressed anger that another doctor received a placement that he wanted in New Orleans and that he felt "abandoned" and "persecuted," which caused him "mental anguish," he has established no facts that the NHSC engaged in any acts of misconduct toward him. *See* Plaintiff's Ex. 33. Bloom's estoppel arguments are simply without merit. They provide no defense and are not a basis for a counterclaim.

### B. *Abuse of Discretion*

Bloom also claims that the NHSC was arbitrary, capricious and abused its discretion when it denied him a hardship waiver. *See* Defendant's Opp.Mem. at pp. 21–25.

█ The decision to grant or deny a waiver of a scholarship recipient's service obligation is committed to the discretion of the Secretary. *United States v. Arron,* 954 F.2d at 252 n. 4; *United States v. Conway,* 686 F.Supp. 571, 573 (E.D.La.1988), *aff'd,* 868 F.2d 1269 (5th Cir.1989). The Secretary's denial of a request for a waiver may be reversed if it was arbitrary and capricious,

an abuse of discretion, or not in accordance with law. *United States v. Conway*, 686 F.Supp. at 573; *see also United States v. McManus*, 846 F.Supp. 1283, 1293 (M.D.N.C. 1994); *United States v. Haithco*, 644 F.Supp. 63 (W.D.Mich.1986); *United States v. Beane*, No. 88–8488, 1990 WL 63603, *3 (E.D.Pa. 1990).

The conditions for waiving a service or payment obligation are set forth in the governing statute and in implementing regulations. *See* 42 U.S.C. § 254o; 42 C.F.R. § 62.12. Under these provisions, a scholarship recipient's service or payment obligation may be waived or suspended when service or payment would be impossible or involve extreme hardship. Impossibility requires a showing, based on information and documentation, that the scholar suffers from a physical or mental disability that results in his permanent inability to perform the activities necessary to comply with the scholarship obligation. 42 C.F.R. § 62.12(c). Whether service or payment of the scholarship obligation will impose an "extreme hardship" requires consideration of the following factors: (1) the scholar's present financial resources and obligations; (2) the scholar's estimated future financial resources and obligations; (3) the extent to which personal problems, such as physical or mental disability or terminal illness in the scholar's immediate family, would so intrude on the scholar's present and future ability to perform as to raise a presumption that the scholar will be unable to perform the obligation incurred. 42 C.F.R. § 62.12(d).

 Defendant's first three waiver requests contained no supporting documentation on the issues of impossibility or extreme hardship. *See* Plaintiff's Exs. 23, 27. He initially gave the following reasons in support of his waiver request:

(1) The obligation is incompatible with my family ties and I cannot coordinate my wife's future with mine as a CORE [sic] doctor. I cannot let my son grow up without his father at home.

(2) I have invested in property based on my placement in New Orleans by the CORE [sic].

(3) Fulfilling my obligation will damage my relationship with a potential lifetime employer and will damage my reputation, making me look unstable to hold down a job. I have had six jobs in the last two years.

(4) Fulfilling my obligation will cause me financial hardship.

(5) The uncertain future of present city and private clinics would again put me in a stressful and potentially ruining situation.

*See* Plaintiff's Ex. 23. Finally, in support of his November 21, 1988 request for a waiver, the defendant submitted a letter from his doctor and an unsworn income and expense form from his divorce proceeding. *See* Plaintiff's Ex. 29.

The Secretary denied Bloom's waiver request because there was no evidence that compliance would be impossible or impose an extreme hardship. *See* Plaintiff's Exs. 28, 30. The Secretary noted that Bloom was a *practicing* physician who was capable of fulfilling his obligation through service or monetarily. *See* Plaintiff's Ex. 30. The Secretary's decision to deny defendant's waiver request was not arbitrary and capricious, an abuse of discretion or contrary to law. Defendant did not submit sufficient evidence to demonstrate that payment of the scholarship obligation would be impossible or impose extreme hardship upon him. As to his financial condition, he did not submit official records that would document his salary; nor did he submit tax returns, bank statements or other records indicating his financial position. While he did submit an unsworn, self-prepared document that he filed in his divorce proceeding, this unsupported statement was insufficient to demonstrate that he could not pay. Bloom presented little evidence of his financial resources and obligations at the time of his waiver request, and no evidence of his future financial resources and obligations. Further, defendant submitted insufficient information to demonstrate that he suffered from personal problems that would so intrude on his present and future ability to perform as to raise a presumption that he would be unable to perform his obligation. Defendant did submit a letter from a doctor who was a colleague of his indicating that

several "crisises" had caused Bloom to become severely depressed, one of which was his service obligation. However, his doctor did not opine that Bloom's condition was such that he could not practice medicine. Rather, he was being treated with Prozac and showed "some slight improvement," although his outlook on life was still very "pessimistic." *See* Plaintiff's Ex. 29 at Ex. 8. The doctor did not even opine whether the condition was chronic; indeed he only stated that it "could be chronic since three of the four stresses he has suffered are ongoing." *Id.* The doctor said that Bloom's condition depended on "how it is going." *Id.* Among Bloom's other personal problems cited were the death of an aunt, the diagnosis of his father with cancer, his divorce and resulting judgment for child support and alimony and his NHSC obligation. Other courts have upheld the Secretary's decision to deny waiver requests under similar circumstances. *See United States v. Haithco,* 644 F.Supp. 63 (W.D.Mich.1986) (upholding denial of waiver for failure to provide documentation); *United States v. Beane,* No. 88–8488, 1990 WL 63603, *3 (E.D.Pa.1990) (depressive disorder and family separation). Accordingly, the Court finds that the Secretary's denial of defendant's waiver request was not improper under the applicable legal standard. Defendant did not carry his burden of showing impossibility or extreme hardship.

### C. *Contract Defenses are not Applicable*

■ · Defendant has asserted a number of contract defenses, namely breach of contract, impossibility, and accord and satisfaction, to resist payment of his scholarship obligation. These defenses are not applicable here. While the relationship between the scholar and the NHSC is evidenced by a contract, the relationship is statutory, not contractual. *United States v. Vanhorn,* 20 F.3d 104, 110 (4th Cir.1994) (contract defenses of substantial compliance, economic duress, and estoppel are not valid defenses in cases under this statutory scheme); *United States v. Arron,* 954 F.2d at 251; *United States v. Melendez,* 944 F.2d 216, 219 (5th Cir.1991) (contract principles do not apply to NHSC scholarship agreement); *United States v. Citrin,* 972 F.2d 1044, 1049 (9th Cir.1992); *United States*

*v. Martin,* 710 F.Supp. at 274 (impossibility defense does not apply to contracts when the terms are established by statute). Hence, defendant's contract defenses are inapplicable in this case.

### D. *Intentional Infliction of Emotional Distress*

■ Defendant's counterclaim purports to assert a claim against the government for intentional infliction of emotional distress, relying on the same conduct he cites in support of his estoppel theory. The government asserts jurisdictional and procedural defenses to this claim. It asserts that the Court lacks subject matter jurisdiction over this claim because Bloom did not satisfy the administrative claim prerequisite of the Federal Tort Claims Act, 28 U.S.C. § 2675(a), and the claim does not satisfy the compulsory counterclaim exception to the administrative claim requirement. *See* 28 U.S.C. § 2675(a); *Frederick v. United States,* 386 F.2d 481, 488 (5th Cir.1967). The Court agrees that Bloom has not satisfied the administrative claim requirement. The record is clear that Bloom did not file an administrative claim prior to filing his counterclaim. *See* Plaintiff's Ex. 4, Affid. of Norris Lewis at ¶ 7. However, the Court cannot state that a claim for intentional infliction of emotional distress would not be a compulsory counterclaim under Fifth Circuit jurisprudence. *See, e.g., Park Club, Inc. v. Resolution Trust Corp.,* 967 F.2d 1053, 1058 (5th Cir.1992). A counterclaim is compulsory if any one of the following four tests is met:

1. whether the issues of fact and law raised by the claim and counterclaim largely are the same;

2. whether res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule;

3. whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and

4. whether there is any logical relationship between the claim and the counterclaim.

*Park Club,* 967 F.2d at 1058. Here, the Court cannot say that there is not a logical relationship between the claim and the counterclaim, which would suffice to render the counterclaim compulsory under *Park Club, supra.*

However, this does not end the matter. Rather, it is apparent that this record fails to support a claim for intentional infliction of emotional distress as a matter of law. For defendant to recover for intentional infliction of emotional distress, he must prove (1) that the conduct of the NHSC was extreme and outrageous; (2) that the emotional distress he suffered was severe; and (3) that the NHSC intended to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from its conduct. *See White v. Monsanto Co.,* 585 So.2d 1205, 1209 (La.1991). This record does not raise a material issue of fact that the conduct of the NHSC was extreme and outrageous or that it knew that severe emotional distress would be substantially certain to result from its conduct. *White* required conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency." 585 So.2d at 1209. Liability does not attach when an actor insists upon his legal rights in a permissible way "even though he is aware that such insistence is certain to cause emotional stress." *Id.* at 1210. Bloom's claim for intentional infliction of emotional distress is simply insufficient as a matter of law. The NHSC did nothing more than insist upon its legal rights in a permissible way.

### E. *The NHSC did not Compromise Defendant's Scholarship Debt*

Defendant contends that the NHSC compromised his scholarship debt from approximately $377,000 to $27,200 or that it should be estopped from collecting more than $27,200. Defendant relies on a letter he received from DHHS on September 26, 1990 indicating that the Public Health Service intended to have the IRS offset his income tax refund against his NHSC scholarship debt. The letter listed the amount of the debt as $27,200.70. *See* Plaintiff's Ex. 36. Defen-

dant telephoned the accounts receivable section to verify the $27,200.70 amount and states that he was advised that this amount was correct. He confirmed the telephone conversation in a letter. *See* Plaintiff's Ex. 38. Defendant made payments based on this amount, and while he mailed payments totalling $27,200.70, the $11,700 remittance labelled "final payment" was not cashed by DHHS because it stipulated "final payment." *See* Plaintiff's Exs. 39, 40. In a letter dated June 30, 1994, DHHS advised Bloom's attorney that it had made an error when it told Bloom that $27,200.00 was the amount by which he was past due. The letter stated that the prior letter pertained to a Dr. Charles Bloom, not Dr. Christopher Bloom. *Id.* Ex. 40.

Defendant claims that before all this happened, he had filed a lawsuit against the NHSC to enjoin any collection activity, which he dismissed voluntarily once he received its agreement to compromise his obligation. The record does not support these allegations. Defendant's lawsuit was dismissed for failure to prosecute on July 23, 1990, *before* defendant received the September 26, 1990 offset letter. *See* Plaintiff's Exs. 3, 36.

The NHSC denies that it had any intention to compromise the defendant's debt and asserts that Bloom is seizing upon an error of which he should have been aware to try to evade his payment obligation. The government has submitted evidence that if Bloom's assertions were true, it would have compromised approximately 93% of the amount owed, which would have violated its longstanding policy not to compromise scholarship debts substantially. *See* Plaintiff's Ex. 2, Affid. of Donald Pooton. Further, the government submitted evidence that the principal amount of Bloom's scholarship debt is $152,579.47 and that the Federal Claims Collection Act, 31 U.S.C. § 3711(a)(2), requires Justice Department approval to compromise a debt of over $100,000 in principal. Plaintiff's Ex. 2, Affid. of Donald Pooton. Here, no referral to the Justice Department was made. *Id.* at ¶ 7. Further, the government states that its policy is to require a repayment agreement when it agrees to compromise debts, and there is no such agree-

ment here. *Id.* at ¶ 8. The government also states that the error in its September 1990 correspondence to Bloom should have been obvious to him since the letter contained the social security number of another defaulting scholar, not defendant's. The foregoing evidence is not controverted and overwhelmingly demonstrates that the government did not intend to compromise Bloom's debt at $27,-200.

 Bloom asserts that his detrimental reliance should estop the government. The Court has already stated the requirement that a party seeking to invoke the doctrine of estoppel against the government must prove affirmative misconduct by the government. *E.g., Marine Shale Processors,* 81 F.3d at 1349–50. In addition, he must satisfy the traditional elements of estoppel: (1) that the party to be estopped was aware of the facts; (2) the party to be estopped intended the act or omission to be acted upon; (3) the party asserting estoppel did not have knowledge of the facts; and (4) the party asserting estoppel reasonably relied on the misrepresentation to its detriment. *See id.; Moody v. United States,* 783 F.2d 1244, 1246 (5th Cir.1986). Here, defendant cannot satisfy the heavy burden of proving affirmative misconduct by the government. The September 1990 letter from DHHS as to the amount defendant owed does not establish affirmative misconduct. This was at most negligence. As the Court noted earlier, negligence is not sufficient to give rise to estoppel against the government. *See Marine Shale Processors,* 81 F.3d at 1349–50. Further, the facts of this case fall short of demonstrating that the NHSC knowingly induced defendant to believe that his debt had been reduced from almost $400,000 to $27,200 or that he reasonably relied to his detriment on any "misrepresentations" of the NHSC. Bloom should have known that the $27,200 amount was incorrect. It was substantially different from the amount the NHSC had previously demanded from him. On May 8, 1989, he had been advised that he owed the government $410,004.84. *See* Plaintiff's Ex. 34. Further, he later received demand letters from the NHSC stating his liability of over $430,000. *See* Plaintiff's Exs. 41, 42. He was apprised by DHHS on June 30, 1994

that the amount reflected as past due on page 2 of the Department's letter dated September 26, 1990 was in error and pertained to a Dr. Charles Bloom, not Dr. Christopher Bloom. *See* Plaintiff's Ex. 40. Further, the social security number listed on the erroneous past due statement was not Bloom's but someone else's, which should have been obvious to him. *Compare* Plaintiff's Exs. 35, 36. Defendant's assertions of compromise and estoppel raise no material fact issues and are fatally defective as a matter of law.

### F. *Defendant is not Entitled to One–Year Service Credit*

 Defendant apparently claims that he should be given credit for work at the St. Bernard Clinic from January 1987 to June 1987. However, he admits that the St. Bernard Clinic was not placed on the approved list until February of 1988. He was never placed there by NHSC.

Bloom cites no authority that entitles him to be given credit retroactively for his tenure at St. Bernard Clinic. He was never approved for placement at the St. Bernard Clinic, and he is not entitled to credit for his unauthorized service there. *See United States v. Flood,* C.A. No. 2:92cv333 (E.D.Va. 1993) (citing cases); *United States v. Redovan,* 656 F.Supp. 121, 127 (E.D.Pa.1986), *aff'd,* 826 F.2d 1057 (3d Cir.1987). *Cf. Rendleman v. Bowen,* 860 F.2d 1537, 1542–43 (9th Cir.1988) (physician cannot argue that area where he served should have been designated a health manpower shortage area or rely on it being so designated after his default).

### G. *Service After Default*

 Defendant contends that he should be entitled to honor his service obligation after default because his service obligation was circumvented by the NHSC. This claim is without merit. Defaulting scholars have neither contractual nor statutory rights to serve out their obligations after default. *See United States v. Gary,* 963 F.2d 180, 185 (8th Cir.1992). Once the scholar is in default status, the service option terminates, and the scholar is required to pay his debt monetari-

ly. *See United States v. Gross,* 725 F.Supp. at 894; *United States v. Redovan,* 656 F.Supp. 121, 126 (E.D.Pa.1986), *aff'd,* 826 F.2d 1057 (3d Cir.1987). While the Secretary has discretion to permit service instead of monetary payment, this is wholly within the discretion of the Secretary and is not reviewable by the Court. *See United States v. Gary,* 963 F.2d at 183.

## IV. *Conclusion*

For all the foregoing reasons the motion for summary judgment filed by the United States is granted. The government is entitled to summary judgment on its claim, and it is further entitled to summary judgment dismissing defendant's counterclaim. The government is entitled to judgment in accordance with the formula set forth in 42 U.S.C. § 254o(b)(1) for three times Bloom's scholarship award of $58,188.10, plus accrued interest on these amounts as if they had been loans bearing interest at the maximum legal rate on the date the payment was made to the recipient, less credit for service and payments, with payments applied first to accrued interest. *See* 42 U.S.C. § 254o(b)(1); 45 C.F.R. § 30.13(f). As of January 31, 1996, DHHS computed Bloom's scholarship debt to be $520,403.37, with interest accruing at $73.24 per day. Plaintiff's Ex. 1, Affid. of Donald W. Pooton. Bloom has not disputed the accuracy of this computation. Accordingly, defendant is liable for $520,403.37 as of January 31, 1996, together with prejudgment interest from that date and post-judgment as provided by law.